436 A.2d 129

**COMMONWEALTH of Pennsylvania,**

v.

**Nathan OWENS, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 24, 1981.

Decided Oct. 27, 1981.

Elias B. Landau, Philadelphia, for appellant.

Robert B. Lawler, John Sikorski, Philadelphia, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is a direct appeal from judgments of sentence imposed by the Court of Common Pleas of Philadelphia upon three citations of criminal contempt entered against appellant during trial.[1] The court cited and sentenced appellant summarily as each of the contempts occurred. A sentence of six months' imprisonment was imposed upon each of the citations, and the sentences were ordered to run consecutively.

Appellant challenges both the sufficiency of the evidence to sustain the contempt convictions and the legality of the court's summary procedure. We reject appellant's contentions and, hence, affirm.

Underlying each of the three contempt convictions was appellant's persistent insistence upon the right to dismiss his

---

1. This appeal was filed under the former version of 42 Pa. C.S. § 722, which conferred jurisdiction upon this Court of appeals from sentences imposed upon citations of direct criminal contempt in the courts of common pleas.

court-appointed attorney. Appellant initiated his demand immediately before closing arguments were scheduled to begin. At that time the court dismissed the jury from the courtroom and conducted a colloquy with appellant. The colloquy revealed appellant's dissatisfaction with his counsel's strategy during trial, particularly the failure to call several witnesses and to ask certain questions. The court, however, denied appellant's request to dismiss his attorney and to obtain new counsel. After the court's ruling, the following ensued, resulting in the first contempt conviction:

"THE DEFENDANT: Well, he ain't going to represent me. He ain't going to argue. You may as well get your contempt book out. I ain't going to allow him to say nothing.

THE COURT: What would you do if he tried to speak in your behalf?

THE DEFENDANT: I ain't going to let him.

THE COURT: What do you mean you wouldn't let him?

THE DEFENDANT: I am going to disrupt this courtroom because I don't want him to defend me no more. I want me another lawyer.

THE COURT: I am denying your request for another lawyer.

THE DEFENDANT: Okay, you can deny it. I told you what I am going to do.

THE COURT: You will be in very serious trouble with this Court, I will tell you now, if you disrupt the courtroom.

THE DEFENDANT: I am in very serious trouble now. I ain't going anywhere. The only thing I want is a fair trial. If I can't get a fair trial, I will get nothing.

THE COURT: You are getting a fair trial.

THE DEFENDANT: I am not getting a fair trial.

THE COURT: Sit down, Mr. Owens.

. . . . .

MR. FREEMAN [defense counsel]: Your Honor, it has been brought to my attention—perhaps we should simply

place Mr. Owens under oath. Of course, he has been placed under oath already. I would like to conduct some sort of colloquy as to what his desires are in this case, that is whether he has been advised that he has a right to counsel, to have counsel close in his behalf and he has the right to have counsel call witnesses and to cross-examine them.

THE COURT: Mr. Owens, come up.

THE DEFENDANT: I ain't getting up.

THE COURT: Sheriff. This is not a joke, it is a courtroom.

(Whereupon, the defendant caused a disturbance in the courtroom.)

THE COURT: Now, Mr. Owens, I am holding you in contempt. I saw you disrupt this courtroom.

THE DEFENDANT: He snatched the chair from underneath me.

THE COURT: I am sentencing you to six months in jail for contempt.

THE DEFENDANT: He snatched the chair from underneath me.

THE COURT: Keep quiet. I am sentencing you to six months in jail to follow any term you are now serving. You will not get another attorney. Is it your wish that your present attorney, Mr. Richard Freeman, not speak on your behalf and not address this jury? Well, Mr. Owens.

THE DEFENDANT: Give me another contempt.

THE COURT: You refuse to answer?

MR. FREEMAN: Nat, answer.

.    .    .    .    .

THE COURT: Put him down there. Sit down, Mr. Owens.

Mr. Freeman, you may sit over there. Bring the jury back." [2]

2. Record at 5–9.

The statements and conduct leading up to the second contempt conviction occurred immediately after the jury had returned to the courtroom:

"MR. FREEMAN: Your Honor, may I approach the jury?

THE COURT: Yes.

THE DEFENDANT: Ladies and gentlemen of the jury, this man—I have dismissed this attorney, he is not representing me anymore. I have a right to my own attorney and I am not satisfied with the way he is representing me. I am dismissing him. I don't want him to close out the arguments for me.

THE COURT: You had your say. Sit down, Mr. Owens.

THE DEFENDANT: I don't want him to represent me anymore.

THE COURT: I told you to sit down.

THE DEFENDANT: I don't want him here anymore.

THE COURT: Sheriff, take him over and sit him down.

THE DEFENDANT: I don't want him to represent me. I don't want him to speak on my behalf.

THE COURT: I told you in the absence of the jury what is going to happen. Your attorney feels—

THE DEFENDANT: I have a right to my own lawyer, I don't want him to represent me.

THE COURT: You have to pay for your own lawyer.

THE DEFENDANT: I will pay for one.

THE COURT: You asked for the Defender's Association.

THE DEFENDANT: I didn't ask for the Defender's Association.

THE COURT: Don't be disruptive.

THE DEFENDANT: I want my own lawyer.

THE COURT: Not another word.

THE DEFENDANT: I want my own lawyer. I don't want him to talk for me.

THE COURT: I am going to hold you in contempt again.

THE DEFENDANT: Hold me in contempt. I want my own lawyer.

THE COURT: I am sentencing you to an additional six months in jail for contempt to follow all sentences that you are now serving." [3]

Notwithstanding this second contempt conviction, the defendant persisted in his defiance of the court's denial of his request to dismiss his attorney:

"THE DEFENDANT: I still want my own lawyer.

THE COURT: Sit down.

THE DEFENDANT: I don't want him to, you know, represent me.

THE COURT: Everybody has heard you.

THE DEFENDANT: Still, I don't want him to say nothing in my behalf.

THE COURT: Do not be disruptive.

THE DEFENDANT: I want the rights that I am supposed to get. I want a fair trial.

THE COURT: All your rights have been protected.

THE DEFENDANT: I don't want him to represent me.

THE COURT: You have said it.

THE DEFENDANT: Tell him not to say anything about me or the case. I want my own attorney.

THE COURT: I am sentencing you to another six months in jail for contempt and that is to follow all the sentences I have given you.

THE DEFENDANT: You can give me a thousand years.

MR. FREEMAN: I move for a mistrial in this case.

THE COURT: I will grant your request for a mistrial in this case. I am declaring a mistrial in this case.

Incidentally, ladies and gentlemen, he is one of those Holmesburg escapees. You will serve those eighteen months, Mr. Owens. This case will be immediately relisted for trial.

THE DEFENDANT: Thank you.

3. Record at 9–11.

THE COURT: Don't thank me. I am sorry, ladies and gentlemen. This occurs all the time with disruptive defendants who are belligerent and hostile. You have seen one example. I regret we had to declare a mistrial. We will be going through this again. Thank you very much."[4]

## I. Sufficiency of the Evidence.

■ Appellant asserts that the evidence of record does not satisfy the elements of criminal contempt. 42 Pa. C.S. § 4131, upon which the contempt judgments rest, provides:

"The power of the several courts of this Commonwealth to issue attachments and to inflict summary punishment for contempts of court shall be restricted to the following cases:

. . . . .

(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice."

As this Court recently stated in *Commonwealth v. Reid*, 494 Pa. 201, 208, 431 A.2d 218, 222 (1981), "[s]ubsection III requires proof beyond a reasonable doubt of (1) misconduct, (2) in the presence of the court, (3) committed with intent to obstruct the proceedings, which (4) obstructs the administration of justice. *Commonwealth v. Garrison*, 478 Pa. 356, 371, 386 A.2d 971, 979 (1978)." Appellant argues that the record is insufficient to support a finding of "misconduct" for the first contempt conviction. He also argues that all three contempt convictions are invalid because proof of the requisite element of intent is lacking.

■ In attacking the first contempt conviction for want of evidence of misconduct, appellant claims that the only indication of misconduct is contained in the courtroom stenographer's notation, "the defendant caused a disturbance in the courtroom." We reject appellant's narrow view of the record. Apart from the stenographer's notation, there is ample

4. Record at 11–12.

evidence of record to support the court's finding of miscon-
duct at the time of the first contempt conviction.  Not only
had appellant repeatedly protested the court's denial of his
request to dismiss his lawyer, but appellant had also stated
his intention to disrupt the courtroom.  When a disturbance
took place between appellant and the sheriff, the court
reported that disturbance on the record.  Manifestly, the
record sufficiently demonstrates misconduct.  See *Common-
wealth v. Snyder*, 443 Pa. 433, 275 A.2d 312 (1971) (defend-
ant's interruption of closing arguments contemptuous).

Appellant argues that all three contempt convic-
tions should be set aside because "his intent was not to
obstruct justice, but to be in his view an effective advocate
for himself." [5]  This argument, however, misconceives the
element of intent required for summary conviction of crimi-
nal contempt.  *Commonwealth v. Reid*, supra, like earlier
cases, makes clear that a subjective intent to obstruct the
administration of justice is not a requisite element of crimi-
nal contempt.  See, e.g., *Commonwealth v. Africa*, 466 Pa.
603, 353 A.2d 855 (1976) (plurality).  The requisite element
of intent is satisfied if the contemnor has the intent to
obstruct the proceedings.  When that intent manifests itself
in misconduct in the presence of the court which, as on this
record, in fact obstructs the administration of justice, crimi-
nal contempt has been committed.[6]

5.  Appellant's brief at 16.

6.  Appellant further suggests that the trial court induced his contemp-
tuous behavior by failing to advise him that he could proceed pro se.
Where the accused does not request to represent himself before trial,
the constitutional right to self-representation recognized in *Faretta v.
California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), is not
implicated.  When, during the course of trial, an accused wishes to
dismiss counsel and either represent himself or obtain new counsel,
his request is addressed to the sound discretion of the trial court.
See *United States v. Dunlap*, 577 F.2d 867, 868–69 (4th Cir.), cert.
denied, 439 U.S. 858, 99 S.Ct. 174, 58 L.Ed.2d 166 (1978); *Sapienza v.
Vincent*, 534 F.2d 1007, 1010 (2d Cir. 1976); *United States v. Delling-
er*, 472 F.2d 340, 408 (7th Cir. 1972), cert. denied, 410 U.S. 970, 93
S.Ct. 1443, 35 L.Ed.2d 706 (1973); *Smith v. United States*, 353 F.2d
838, 845 (D.C. Cir. 1965), cert. denied, 384 U.S. 910, 86 S.Ct. 1350, 16
L.Ed.2d 362 (1966).  See also ABA Project on Standards for Criminal

 

## II. Adequacy of Summary Procedure.

Appellant challenges the summary nature of his criminal contempt convictions. Relying upon *Codispoti v. Pennsylvania*, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974), he argues that, because the aggregate of the sentences imposed exceeds six months' imprisonment, he should have been afforded the right to a jury trial. Appellant's reliance is misplaced. *Codispoti* holds that the Sixth Amendment guarantees the right to a jury trial on multiple charges of direct criminal contempt when two conditions are satisfied: (1) the court postpones adjudication and sentence for contempt until the end of trial; and (2) the court imposes sentences which either alone, or when aggregated, exceed six months' imprisonment. The rationale underlying the rule enunciated in *Codispoti* is that, unlike during trial, at the end of trial there is "no overriding necessity for instant action to preserve order and no justification for dispensing with the ordinary rudiments of due process." Id., 418 U.S. at 515, 94 S.Ct. at 2692. Because on this record the charges of criminal contempt were adjudicated and punished during trial as the contemptuous conduct occurred, and because no individual sentence for contempt exceeded six months' imprisonment, appellant was not entitled to a jury trial. *Codispoti v. Pennsylvania*, supra; *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).

Appellant's remaining challenge, that the summary procedure denied him due process of law, is equally without merit. Contrary to appellant's assertion, it is clear that, prior to summarily citing and punishing appellant for contempt, the court gave appellant sufficient notice that his conduct was contemptuous and sufficient opportunity to desist. Nor does this case present, as appellant contends, a "running bitter controversy" between the judge and appellant which would have required the judge to recuse himself

Justice, Standards Relating to Providing Defense Services § 5.3 (Approved Draft, 1968). Of course, as with any asserted trial court error, the proper procedure by which to seek relief from the denial of such a request is through the orderly process of appellate review, not through contemptuous behavior.

and refer trial to another judge. Compare *Mayberry v. Pennsylvania*, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971) with *Commonwealth v. Patterson*, 452 Pa. 457, 308 A.2d 90 (1973).

As the American Bar Association Standards state, "[t]he only purpose of a criminal trial is to determine whether the prosecution has established the guilt of the accused as required by law, and the trial judge should not allow the proceedings to be used for any other purpose." ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 1.1 (Approved Draft, 1972). Here, the trial judge properly used his power "to cite and, if necessary, punish summarily anyone who, in his presence in open court, willfully obstructs the course of criminal proceedings." Id. at § 7.1.

Because the evidence of record satisfies each of the elements of criminal contempt, we affirm judgments of sentence.

Judgments of sentence affirmed.