J-S40023-17

2017 PA Super 234

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JOSHUA ROBINSON, :
:
Appellant : No. 1536 EDA 2014

Appeal from the Judgment of Sentence May 5, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: MC-51-MD-0000750-2014

BEFORE: OTT, J., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY DUBOW, J.: **FILED JULY 19, 2017**

Appellant, Joshua Robinson, appeals from the Judgment of Sentence

imposed in connection with six summary criminal contempt convictions

incurred in the Court of Common Pleas of Philadelphia County on May 5,

2014.[1] After careful review, we affirm.

Appellant sought to represent himself in connection with numerous

offenses pending against him, including Robbery and Attempted Murder.[2]

---

[*] Former Justice specially assigned to the Superior Court.

[1] The court imposed six consecutive terms of three to six months' incarceration, one for each contempt conviction, for an aggregate of 18 to 36 months' incarceration, and a $100 fine for Appellant's first contempt conviction.

[2] Appellant had allegedly shot at a police officer.

On May 5, 2014, the trial court held a **Grazier**[3] hearing. The court first reviewed Appellant's mental health evaluation, in which a psychiatrist concluded that, although Appellant "was at times not cooperative with the interviewer's questions[,]" he was "capable of taking part in legal proceedings." N.T., 5/5/14, at 5. The trial court then began the **Grazier** colloquy by asking Appellant his age. Before answering the question, Appellant immediately interrupted the proceedings by asking if he could "say something before we begin[.]" **Id.** at 6. Appellant then asked the trial court numerous questions about the nature of the proceedings and his representation by counsel. After several more questions, Appellant claimed to be confused about his status as the defendant:

> THE DEFENDANT: …You saying I am the defendant?
>
> THE COURT: Yes.
>
> THE DEFENDANT: I'm the defendant?
>
> THE COURT: You are a defendant Mr. Robinson, yes.
>
> THE DEFENDANT: You sure?
>
> THE COURT: Mr. Robinson, I am not going to play games with you. I have a mental health examination that indicates that you are not cooperative. You did this in my courtroom the last time we had you.
>
> THE DEFENDANT: That wasn't me. You sure?

N.T., 5/5/14, at 7-8.

_____

[3] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

Appellant continued arguing with the trial court, and the sheriff ordered Appellant to "[c]alm down." *Id*. at 9. The transcript indicates that Appellant's misbehavior escalated during the remainder of the hearing, with the trial court finding Appellant in direct criminal contempt six times, as follows:

> THE COURT: Why are you asking me if I am sure you are a defendant?
>
> THE DEFENDANT: I am just confused.  I just --
>
> THE COURT: No, no.  Answer my questions.
>
> THE DEFENDANT: I mean, you yelling --
>
> THE COURT: Answer my questions.
>
> THE DEFENDANT: That doesn't help me understand.  I cannot answer --
>
> THE COURT: I am holding you in contempt for willfully trying to disrupt the operation --
>
> THE DEFENDANT: I --
>
> THE COURT: Shut up while I am talking.  Three to six months for contempt.
>
> THE DEFENDANT: I don't consent to that.  I don't consent to that.
>
> THE COURT: I will ask you again; answer my question.  Why are you questioning me --
>
> THE DEFENDANT: I would love to.
>
> THE COURT: Stop interrupting me.
>
> THE SHERIFF: Chill out.

THE COURT: Stop.

THE DEFENDANT: I would love to answer your question.

THE COURT: Why did you ask -- consecutive three to six months and a hundred dollar fine.

THE DEFENDANT: I don't consent to that. I don't consent to that.

THE COURT: I will ask you again: Why are you asking me whether I consider you a defendant? I don't understand why would you say you are not a defendant. You have two criminal cases pending against you in my courtroom, so why are you considering yourself not a defendant? Answer that question.

THE DEFENDANT: I would love to answer that question.

THE COURT: Go ahead. I am waiting.

THE DEFENDANT: Soon as somebody comes forth with evidence that I have liability here in this instant matter. I mean, me, as a man --

THE COURT: Does the Commonwealth have any thoughts on this? He is not cooperating. I guess he's attacking -- what I think he's doing is trying to attack the jurisdiction of the Court --

THE DEFENDANT: What jurisdiction? Which --

THE COURT: -- which isn't getting far. Be quiet while I am talking.

THE SHERIFF: Don't talk.

THE COURT: Three to six months contempt consecutive to the other two contempts.

THE DEFENDANT: I don't consent to that.

THE COURT: A fourth contempt, three to six months consecutive. You are now serving 12 to 24 months in contempt. Who is handling this for the Commonwealth?

MR. FURBER: I am.

THE COURT: Is the Commonwealth in any way prejudiced in giving this a regular date until he decides to behave himself and act like a civilized human in the courtroom and stop trying to disrupt the proceedings of my courtroom? I have 14 cases. I don't have the time to do this all day. You did this before when you were in my courtroom. You didn't cooperate with the mental health --

MR. FURBER: Judge, I have no problem giving it a regular date. Here's my issue: Obviously, the way the defendant is acting, I don't think --

THE COURT: He's just trying to disrupt the operations of the courtroom. That's what he's trying to do.

MR. FURBER: The way I see this going forward, Judge, is, I don't think this is a case in which he should be representing himself because he would just be disruptive the entire trial.

THE COURT: I have a feeling you are right about that, too.

MR. FURBER: This is a case where Mr. Robinson will not be present at his trial but can watch --

THE DEFENDANT: I don't consent --

THE COURT: Stop interrupting the district attorney. Three to six months consecutive, holding you in contempt. You are now serving 15 to 30 months for contempt. We won't have to worry about felonies of the first degree pretty soon.

\* \* \*

THE COURT: Take him away.

THE DEFENDANT: I would be more than willing to consent to that --

THE COURT: Good-bye.

THE DEFENDANT: -- on the condition that somebody explain the nature of these charges.

THE COURT: Good-bye, Mr. Robinson.

MR. FURBER: Could he be advised of the appeal rights for the contempt issues?

THE COURT: Yes.  Ten days to file a --

THE DEFENDANT: You --

THE COURT: -- motion to reconsider and 30 days --

THE DEFENDANT: I can't consent to that.

THE COURT: Shut up.  Stop interrupting me.  You constantly interrupt me.  I will hold you in another contempt, 18 to 36 months for six contempts.  Give this a regular date.

N.T., 5/5/14, at 9-13, 16-17.

At that point, the court continued the proceedings in each of Appellant's scheduled criminal matters, and the sheriff removed Appellant from the courtroom.  The court also ordered that Appellant undergo an additional mental health evaluation.

On May 15, 2014, Appellant filed a timely Notice of Appeal.  The trial court did not order Appellant to file a Pa.R.A.P. 1925(b) Statement of Errors. The trial court filed a brief Pa.R.A.P. 1925(a) Opinion and summarily opined that Appellant's appeal was interlocutory and should be dismissed.[4]

---

[4] Appellant's Judgment of Sentence for his six direct criminal contempt convictions constitutes a final Order, which is immediately appealable. *See* Pa.R.A.P. 341; *Commonwealth v. Ashton*, 824 A.2d 1198, 1201 (Pa. Super. 2003) ("A person's right to appeal from a criminal contempt citation is immediate.").

- 6 -

Appellant presents the following issue for our review:

Do Appellant's consecutive sentences constitute a violation of Double Jeopardy because Appellant's consecutive sentences stem from one instance of contempt?

Appellant's Brief at 4. Appellant argues that his actions constituted "one instance of contempt," that is, his "contesting the trial court's jurisdiction over Appellant." Appellant's Brief at 8-9. Relying on **Commonwealth v. Williams**, 753 A.2d 856 (Pa. Super. 2000), Appellant contends that the trial court's six consecutive sentences for his "single offense" violated Double Jeopardy.[5] Appellant's Brief at 10.

As this Court has made clear, Double Jeopardy claims "implicate the fundamental legal authority of the court to impose the sentence that it did" and, therefore, challenge the legality of the sentence imposed. **Commonwealth v. Robinson**, 931 A.2d 15, 21 (Pa. Super. 2007).

Both the U.S. and the Pennsylvania Constitutions provide that "[n]o person shall . . . for the same offence . . . be twice put in jeopardy of life or limb. . . ." U.S. Const. amend. V; Pa. Const. art. I, § 10. The rights provided by the two clauses are "coextensive." **Commonwealth v. States**, 938 A.2d 1016, 1019 (Pa. 2007). Because the protections afforded by each

---

[5] Although Appellant frames the issue as a Double Jeopardy claim, Appellant effectively challenges the sufficiency of the evidence to support his several contempt convictions. Appellant's Brief at 8-10. Significantly, Appellant does not argue that his actions were not contemptuous, were not committed in the presence of the court, or did not obstruct the administration of justice.

Constitution are identical, we utilize "a unitary analysis of the state and federal double jeopardy clauses[.]" ***Commonwealth v. Schmidt***, 919 A.2d 241, 250 (Pa. Super. 2007) (citation omitted).

"The protections afforded by double jeopardy are generally recognized to fall within three categories: (1) protection against a second prosecution for the same offense after an acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense." ***Id.*** Most relevant to Appellant's argument, we observe that the double jeopardy clause "prohibits the Commonwealth from punishing an accused twice for the same offense." ***Commonwealth v. Owens***, 649 A.2d 129, 137 (Pa. Super. 1994).

With respect to contempt, our Supreme Court has held that "[t]he power to punish for contempt, including the power to inflict summary punishment, is not derived by statute but rather is a right inherent in courts and is incidental to the grant of judicial power under Article 5 of our Constitution." ***Commonwealth v. Marcone***, 410 A.2d 759, 763 (Pa. 1980); ***see also Commonwealth v. McMullen***, 961 A.2d 842, 849 (Pa. 2008) (observing "[c]ontempt of court is unlike other substantive crimes. The Crimes Code abolished common law crimes, 18 Pa.C.S.[] § 107(b), but also provided in its preliminary provisions that 'this section does not affect the power of a court to declare forfeitures or to punish for contempt or to employ any sanction authorized by law for the enforcement of an order'").

Notwithstanding this inherent power in the courts, our legislature has sought to define the crime of contempt and regulate the punishment for its commission. Section 4132 of the Judicial Code provides:

> The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:

> \* \* \*

> (3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa.C.S. § 4132.

"[T]o sustain a conviction for direct criminal contempt under this provision there must be proof beyond a reasonable doubt: (1) of misconduct, (2) in the presence of the court, (3) committed with the intent to obstruct the proceedings, (4) that obstructs the administration of justice." **Williams**, 753 A.2d at 856. "Much weight should be given to the trial court's judgment in assessing the necessities of a particular situation." **Commonwealth v. Moody**, 125 A.3d 1, 12 (Pa. 2015). "A trial court's finding of contempt will not be disturbed absent an abuse of discretion." **Id.**

In **Commonwealth v. Owens**, 436 A.2d 129 (Pa. 1981), our Supreme Court affirmed three contempt convictions imposed after contemptuous outbursts by a defendant who wanted to dismiss his attorney and obtain new counsel just before closing arguments in his jury trial. **Id.** at 130-31. In pursuit of his desire to obtain new counsel, the defendant caused a physical disturbance in the courtroom during a hearing out of the

jury's presence, and then proceeded to interrupt the proceedings further when the jury returned to the courtroom for closing arguments. *Id.* at 130-32. The trial court summarily found the defendant in contempt after each outburst, imposed three consecutive sentences of six months' incarceration for a total of eighteen months' incarceration, and declared a mistrial. *Id.*

Our Supreme Court affirmed Owens' three summary contempt convictions and the consecutive sentences imposed, even when considering the brief period of time in which the acts occurred as well as the single motivation of dismissing his attorney and obtaining new counsel.[6] *Id.*

Here, Appellant's conduct and misbehaviors during the hearing constituted six distinct contemptuous acts obstructing the administration of justice. Appellant persisted in his misbehaviors despite the trial court's warnings, despite the efforts of the sheriff, and despite the contempt sentences preceding each subsequent contemptuous act. Appellant's conduct obstructed the administration of justice with respect to the trial court's other cases that day. Appellant also obstructed the trial court's resolution of his own *Grazier* hearing, which was continued and delayed the pending trial, in addition to Appellant's other matters scheduled for trial in another courtroom pending resolution of the *Grazier* hearing. N.T., 5/5/14,

---

[6] Owens did not raise a Double Jeopardy claim; rather, Owens challenged the sufficiency of the evidence and raised a due process claim challenging the adequacy of the summary proceedings. *Owens*, 436 A.2d at 130, 133.

at 22-23. Further, as a result of Appellant's misconduct in the courtroom, the trial court ordered an additional mental health evaluation, which added even more delay to the proceedings. *Id.* at 26-27. The record adequately supports six distinct findings of direct criminal contempt in light of Appellant's misbehaviors.

Appellant's novel assertion that this Court should focus narrowly on examining the motivation behind his actions when deciding how many contemptuous acts occurred is unsupported by the case law. It is of no moment that Appellant decided to contest the trial court's jurisdiction.

We further note that Appellant's reliance on **Williams** is misplaced. After he was sentenced, Williams gave the trial court the middle finger and at the same time stated, "F—k You." **Williams**, **supra** at 859. The trial court found Williams in contempt for the finger gesture and, separately, for the verbal remark. For each of the two contempt convictions, the trial court stated its intent to sentence Williams to five months and twenty-nine days imprisonment to be served consecutively. On appeal, Williams argued, *inter alia*, that the consecutive sentences violated the Double Jeopardy clauses of the Pennsylvania and United States Constitutions. This Court agreed, concluding that the "verbal utterance and hand gesture were contemporaneously executed, and Appellant's hand gesture is universally recognized throughout Western civilization as having the same meaning as his foul utterance." **Williams**, **supra** at 864. Accordingly, the conduct

constituted "one unified act of contemptuous misconduct directed toward the [t]rial [c]ourt[.]" *Id.* at 864-65.

Here, Appellant's actions did not constitute one unified contemporaneous act similar to *Williams*. Rather, Appellant committed six separate contemptuous acts during his hearing while paying absolutely no heed to the court's admonitions and instructions. Our resolution is necessary to vindicate the authority of trial courts to maintain order in the courtrooms of this Commonwealth and to punish offenders who obstruct the administration of justice through their misdeeds in the court's presence. Accordingly, we conclude that the trial court did not abuse its discretion and we discern no violation of Double Jeopardy under these particular circumstances.

Judgment of Sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/2017