**[J-23-2022] [MO: Baer, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

COMMONWEALTH OF PENNSYLVANIA,   :   No. 21 WAP 2021
  :
               Appellee   :   Appeal from the Order of the
  :   Superior Court entered February 19,
  :   2021 at No. 336 WDA 2020,
               v.   :   affirming the Judgment of Sentence
  :   of the Court of Common Pleas of
  :   Allegheny County entered January
VIKTOR L. STEVENSON,   :   31, 2020 at No. CP-02-MD-
  :   0004599-2019.
           Appellant   :
  :   ARGUED:  April 12, 2022

## DISSENTING OPINION

**JUSTICE WECHT**                                   **DECIDED: SEPTEMBER 29, 2022**

On September 9, 2019, Ashley Yates obtained a protection from abuse ("PFA") order against Viktor Stevenson.  The order barred Stevenson from Yates' residence, but, for reasons unknown, no one served the order on Stevenson.  Nor did the Commonwealth attempt to apprise Stevenson in any way of the order or its contents.  In the early morning of September 12, 2019, Stevenson entered Yates' home surreptitiously, where he encountered Yates' cousin, Danielle Sutton.  Sutton told Stevenson: "You cannot be here. You have a two-year violation."[1]  Stevenson left, but returned later that morning with Yates' dog.

The Commonwealth charged Stevenson with indirect criminal contempt ("ICC") for violating the PFA order.  An essential element of ICC is prior notice to the contemnor of

---

[1]     Notes of Testimony (N.T.), 10/25/2019, at 16.

the order that he is alleged to have violated.[2]  There being no evidence that anyone served or attempted to serve Stevenson with the order, or that the Commonwealth otherwise provided him notice of the order, the Commonwealth sought to establish notice through circumstantial evidence, including Sutton's statements to Stevenson.  The Majority accepts that evidence and affirms Stevenson's conviction.

I am skeptical that the Commonwealth can establish notice circumstantially from a conglomeration of anecdotal evidence suggesting that the contemnor should have known better than to engage in the prohibited conduct.  The notice required for an ICC conviction ensures that the state does not deprive a person of his or her liberty without first providing advance warning of the prohibition.  It is the government's obligation to provide that notice.  The Commonwealth cannot simply stumble by happenstance into compliance with due process.  Here, the Commonwealth provided no evidence whatsoever that any state official—or anyone otherwise designated by statute, by rule, or by court order—effectuated service of the order or even attempted to inform Stevenson of the issuance of the order or of the conduct it prohibited.  Under such circumstances, I do not believe that the Commonwealth established the notice element necessary to sustain a conviction for ICC.  Accordingly, I respectfully dissent.

The Fourteenth Amendment provides, in relevant part: "No state shall. . . deprive any person of life, liberty, or property, without due process of law. . . ."[3]  Due process of law guarantees "appropriate procedural safeguards" prior to any deprivation of a

---

[2]     *Commonwealth v. Baker*, 766 A.2d 328, 331 (Pa. 2001) (providing that "[t]he contemnor must have had notice of the specific order or decree.").

[3]     U.S. CONST. amend. XIV, § 1.

constitutionally protected interest.[4] One such safeguard is notice.[5] As a matter of due process, the government must take steps reasonably calculated to provide notice, even in the absence of actual notice.[6] The steps that the government takes to provide notice must be reasonable and adequate for the purpose, with due regard for the nature of the proceedings and the character of the rights that may be affected.[7] The Supreme Court of the United States has deemed notice to be constitutionally sufficient when it "was reasonably calculated to reach the intended recipient."[8]

A conviction for ICC rests upon the violation of a court order that occurs outside the presence of the court.[9] In a PFA case, ICC punishes the offender for violating the protective order.[10] Because ICC is a crime, it is subject to all of the procedural safeguards afforded to criminal defendants.[11] In particular, a contemnor facing a charge of ICC is

---

[4] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (cleaned up).

[5] *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976) ("The essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.") (cleaned up).

[6] *Dusenbery v. United States*, 534 U.S. 161, 170 (2002) ("[T]he Due Process Clause does not require such heroic efforts by the Government; it requires only that the Government's effort be 'reasonably calculated' to apprise a party . . . .") (cleaned up).

[7] *See Jones v. Flowers*, 547 U.S. 220, 226-27 (2006).

[8] *Id.* at 226.

[9] *See Knaus v. Knaus*, 127 A.2d 669, 671 (Pa. 1956) (defining and distinguishing direct and indirect criminal contempt).

[10] *See* 23 Pa.C.S. § 6114(a) ("Where the police, sheriff or the plaintiff have filed charges of indirect criminal contempt against a defendant for violation of a protection order . . . or a court-approved consent agreement, the court may hold the defendant in indirect criminal contempt and punish the defendant in accordance with law.).

[11] *See Crozer-Chester Med. Ctr. v. Moran*, 560 A.2d 133, 137 (Pa. 1989); *In re Martorano*, 346 A.2d 22, 29 (Pa. 1975) ("Quite simply, a contemnor who will be sentenced to a determinate term of imprisonment or a fixed fine, which he is powerless to escape by purging himself of his contempt, is entitled to the essential procedural safeguards that attend criminal proceedings generally."); *Bruzzi v. Bruzzi*, 481 A.2d 648, 651 (Pa. Super. 1984) "(A civil label is inappropriate when the court is attempting to punish the contemnor

entitled to prior notice of the order that the contemnor is alleged to have violated. As we have explained, a conviction for ICC rests upon the Commonwealth proving four elements:

> (1) the order must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the prohibited conduct; (2) the contemnor must have had notice of the specific order or decree; (3) the act constituting the violation must have been volitional; and (4) the contemnor must have acted with wrongful intent.[12]

Notice is a judicially created element of ICC that is constitutionally necessary to protect a defendant's due process rights and to afford the defendant the opportunity to conform his or her conduct to the court's order.[13] A conviction is valid only if the contemnor had prior notice of the specific order or decree that the contemnor is alleged to have violated. Where there is no prior notice, the conviction cannot stand.[14]

---

for past acts of misbehavior rather than setting forth the conditions of compliance to which the contemnor was required to conform and conditioning punitive measures on failure to comply therewith.").

[12] *Baker*, 766 A.2d at 331 (cleaned up); *see also Commonwealth v. Garrison*, 386 A.2d 971, 977-78 (Pa. 1978); *Diamond v. Diamond*, 715 A.2d 1190, 1196 (Pa. Super. 1998).

[13] *See Commonwealth v. Owens*, 436 A.2d 129, 134 (Pa. 1981) (finding no due process violation where, "prior to summarily citing and punishing appellant for contempt, the court gave appellant sufficient notice that his conduct was contemptuous and sufficient opportunity to desist.").

[14] *Matter of Mandell*, 414 A.2d 1013, 1015 (Pa. 1980) ("the mere showing of noncompliance with a court order or misconduct impeding the administration of justice is never sufficient, alone, to prove contempt."); *Commonwealth v. Washington*, 368 A.2d 263 (Pa. 1977) (reversing a contempt conviction where the defendant received no notice of the court order); *Commonwealth v. Gaston*, 333 A.2d 779, 781 (Pa. 1975) (plurality opinion) (reversing a conviction for direct criminal contempt where it was not established that the appellant had actual knowledge that his conduct was at variance with his responsibilities to the court); *East Caln Twp. v. Carter*, 269 A.2d 703, 707 (Pa. 1970) ("This Court has previously held that before a defendant may be cited for contempt of an Order of Court it must be shown that he had actual knowledge of the Order."); *Ricci v. Geary*, 670 A.2d 190, 193 (Pa. Super. 1996) (holding in the context of direct criminal

The corollary of the notice element is the requirement that the order is definite, clear, and specific, and that it leaves no doubt or uncertainty in the mind of the person to whom it is addressed as to what is prohibited.[15]  It is axiomatic that one may not be held in contempt of court for contumacious conduct without being forewarned by the court that such conduct is prohibited.  In the context of PFA orders, a clear court order communicates the parameters of prohibited conduct and avoids any uncertainty for either the petitioner or the defendant as to what conduct will not be countenanced.

The redundancy of adjectives used—definite, clear, specific, and leaves no doubt or uncertainty—to describe the clarity of orders required to sustain a conviction for ICC ensures that, if the government is going to bar certain conduct and later punish that conduct by criminal sanction, it may not do so with language so vague or uncertain that it fails to afford fair notice to the contemnor of what conduct is prohibited.[16]  The clarity

---

contempt that the notice requirement of due process would require prior notice by the court of the prohibited conduct); *accord, In re Rubin*, 378 F.2d 104, 108 (3d Cir. 1967) (holding that there was no contempt where the alleged contemnor had no knowledge of the order he was said to have violated).

[15]     *Baker*, 766 A.2d at 331.

[16]     *See, e.g., Pasadena City Bd. of Ed. v. Spangler*, 427 U.S. 424, 439 (1976) ("Because of the rightly serious view courts have traditionally taken of violations of injunctive orders, and because of the severity of punishment which may be imposed for such violation, such orders must in compliance with [Federal Rule of Civil Procedure 65] be specific and reasonably detailed."); *Int'l Longshoreman's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967) ("The most fundamental postulates of our legal order forbid the imposition of a penalty for disobeying a command that defies comprehension."); *Commonwealth v. Garrison*, 386 A.2d 971, 980 n.6 (Pa. 1978) (holding that there was no contempt where the defendant's conduct was not clearly and specifically prohibited by the court's ruling); *see also United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001) ("To be held in civil contempt, [the defendant] must have violated an order that sets forth in specific detail an unequivocal command from the court."); *United States v. Int'l Bhd. of Teamsters*, 899 F.2d 143, 146 (2d Cir. 1990) ("An unclear order provides insufficient notice to justify a sanction as harsh as contempt."); *Ford v. Kammerer*, 450 F.2d 279 (3d Cir. 1971) (reversing a contempt conviction where the court order contained "no

required of a court order is consistent generally with the government's obligation to avoid uncertainty and vagueness when proscribing conduct,[17] and it demands that the contemnor receive prior notice "of the specific order or decree" in order to sustain an ICC conviction.[18] It is futile to insist upon the clarity of a court order to avoid doubt and uncertainty in the mind of the contemnor if we do not likewise insist that the contemnor have notice of the order and its definite, clear, and specific terms.

The Due Process Clause places upon the state the burden of providing notice.[19] Before the state can act to take away one's life, liberty, or property, it must notify the person of the prohibited conduct. It is the burden of the state to ensure service, either directly or by designating someone to provide service, or by taking other affirmative steps reasonably calculated to provide notice. The Commonwealth may—by order, statute, or rule—designate someone to effectuate service and must make good faith attempts at service. In the absence of personal service, evidence that a representative of the government provided the contemnor with actual knowledge of the specific order and its

---

prohibitory language explicitly addressed" to the appellant's act); *In re Rubin*, 378 F.2d 104 (3d Cir. 1967) (reversing a contempt conviction where a question existed regarding whether the appellant's conduct fell within the conduct prohibited by the court's order). *People v. McCowan*, 652 N.E.2d 909, 910 (N.Y. 1995) (dismissing charges against the defendant for violating an order of protection because the substance of the order was not conveyed: "It is not enough . . . [for the court] simply to inform a defendant that 'an order' has been issued, without also telling defendant, either orally or in writing, the contents of the order and the conduct it prohibits").

17      *See Raley v. Ohio*, 360 U.S. 423, 438 (1959) ("A State may not issue commands to its citizens, under criminal sanctions, in language so vague and undefined as to afford no fair warning of what conduct might transgress them.").

18      *Baker*, 766 A.2d at 331.

19      *Cf. United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993); *Commonwealth, Dep't of Transp. v. McCafferty*, 758 A.2d 1155, 1163 (Pa. 2000); *In re Upset Sale, Tax Claim Bureau of Berks County*, 479 A.2d 940, 946 (Pa. 1984).

contents should be a prerequisite to any adjudication holding the contemnor punitively liable for disobeying the order.[20] Fortuitous encounters with third parties are no substitute for notice provided by the government.

That constitutionally adequate notice is the government's responsibility is not an unfamiliar concept. For example, a conviction for driving while one's operating privilege is suspended under 75 Pa.C.S. § 1543 depends, *inter alia*, upon whether the Commonwealth provided actual notice of the agency's decision to suspend operating privileges.[21] In the context of property that is sold via tax sale, this Court has held "that tax sales are proceedings which may deprive creditors of property rights, and hence, notice . . . must measure up to the standards of due process."[22] In particular, due process notice "is information which the County is constitutionally obliged to give" to interested creditors.[23] Before the Department of Corrections may deduct fines from an inmate's bank account, the Department itself is required to provide notice that comports with due process.[24] Before the federal government places an individual on the federal No-Fly list,

---

[20] *See, e.g., Commonwealth v. Padilla*, 885 A.2d 994, 998 (Pa. Super. 2005) (holding that verbal notice by a police officer over the telephone of the PFA order, what it precluded, and the consequences for violating the order, provided adequate notice of the order to sustain a conviction for ICC).

[21] *See Commonwealth v. Zimmick*, 653 A.2d 1217, 1221 (Pa. 1995) (finding actual notice where, *inter alia*, the court informed the defendant at the guilty plea hearing that his license would be suspended); *Commonwealth v. Kane*, 333 A.2d 925, 927 (Pa. 1975) (holding that proof that the notice of suspension was mailed is not sufficient by itself to establish notice).

[22] *In re Upset Sale*, 479 A.2d at 946.

[23] *Id.*

[24] *See Bundy v. Wetzel*, 184 A.3d 551, 558-59 (Pa. 2018); *Montanez v. Sec'y, Pennsylvania Dep't of Corr.*, 773 F.3d 472, 486 (3d Cir. 2014).

"due process requires [the Attorney General] to provide Plaintiffs . . . with notice regarding their status on the No-Fly list and the reasons for placement on that List."[25]   The government cannot simply sit back and hope that airlines provide notice.

The PFA Act does not assign responsibility for service of process to anyone in particular.  Section 6106(e), which governs the commencement of PFA proceedings, provides that "[t]he court shall adopt a means of prompt and effective service in those instances where the plaintiff avers that service cannot be safely effected by an adult individual other than a law enforcement officer or where the court so orders."[26]  Further, "[i]f the court so orders, the sheriff or designated agency or individual shall serve the petition and order."[27]  The PFA Act mandates that PFA orders entered pursuant to Section 6106 be served upon defendants, police departments with jurisdiction, and the sheriff,[28] and further requires that  "[n]otice be given to the defendant, in orders issued under this section, stating that violations of an order will subject the defendant to arrest under Section 6113 . . . or contempt of court under section 6114."[29]

Following the enactment of the PFA Act, this Court promulgated new rules within our Rules of Civil Procedure in order to implement the Act.  Pa.R.C.P 1901.4 directs that "service of the [PFA] petition and temporary order shall be in accordance with Rule

---

[25]     *Latif v. Holder*, 28 F. Supp. 3d 1134, 1162 (D. Or. 2014).

[26]     23 Pa.C.S. § 6106(e).

[27]     *Id.* § 6106(f)

[28]     *Id.* § 6106(g).

[29]     *Id.* § 6108(g).  Section 6113 permits private criminal complaints for violations of a PFA order, Section 6114 permits a violation to be punishable as indirect contempt of court, and Section 6114.1 permits a plaintiff to file a petition for civil contempt for such violations.

1930.4" and requires an affidavit of service in accord with Rule 1905(d). In turn, Pa.R.C.P 1930.4 pertains generally to service of process in domestic relations matters and requires personal service by the sheriff or any competent adult. For service of the PFA petition and temporary order, Pa.R.C.P 1901.4 requires an affidavit of service in a form established by Rule 1905(d). In accord with Section 6108(g) of the PFA Act, Pa.R.C.P 1901.7 requires the final PFA order to be on a form that provides notice to the defendant that "failure to obey this order" may result in arrest and "a charge of indirect criminal contempt as set forth in 23 Pa.C.S. § 6114."

Examination of the PFA Act and the Rules makes two things apparent. First, the PFA Act does not designate anyone in particular to effectuate service. Where the defendant attends the final PFA hearing, the defendant would, presumably, receive the court's order at the conclusion of the proceeding. Where a defendant chooses not to attend the final PFA hearing, neither Section 6106(g) nor 6109(a) identifies who is tasked with providing service. In each instance, the statute is phrased in the passive voice, leaving the actor indeterminate. Second, our Rules do not fill this gap. Although Rule 1930.4, *via* Rule 1901.4, directs that service of the PFA petition and temporary PFA can be made by the sheriff or any competent adult, neither rule addresses the service of final PFA orders.

In the case at bar, the trial court issued a temporary PFA order on August 23, 2019. Stevenson received the PFA petition, participated at the temporary PFA hearing, and received the temporary PFA order. On September 9, 2019, without Stevenson's participation, the trial court issued the final PFA order. Among other things, the final PFA order barred Stevenson from Yates' home. When the trial court entered its final PFA

order, that order superseded the temporary PFA order.[30] The final PFA order in this case did not designate anyone in particular to effectuate service.[31] Nor do we know what efforts were made by the Commonwealth, if any, to complete service of the final PFA order, nor why Stevenson was not served. The Commonwealth made no argument and produced no evidence regarding who was responsible for service, nor any evidence to suggest that Stevenson attempted to evade service.

Three days later, Sutton confronted Stevenson in the basement of Yates' residence, and told Stevenson: "You can't be here."[32] When Stevenson asked Sutton not to call the police, Sutton responded: "You cannot be here. You have a two-year violation. You cannot be here."[33] Sutton later responded in the affirmative when asked whether she told Stevenson "that there was a PFA in effect."[34] The Majority and the trial court rely upon this statement as indicating that Sutton informed Stevenson that there was a final PFA order in effect.[35] It is apparent from the record, however, that Sutton did not mention the final PFA order to Stevenson, did not relay the prohibited conduct identified in the order, and did not explain the consequences should Stevenson violate the order. More importantly, Sutton was not acting as an agent of the government and, therefore, could

---

[30]  *See* Pa.R.C.P. 1905 (providing that final PFA orders supersede any prior PFA orders between the same parties).

[31]  Although we do not know who was responsible for serving the final PFA order, counsel for Stevenson suggested at the contempt hearing that this responsibility belonged to the government. N.T., 10/25/2019, at 25 ("All the government had to do, Your Honor, was to make sure to actually go serve.").

[32]  *Id.* at 15.

[33]  *Id.* at 16.

[34]  *Id.* at 17.

[35]  *See* Maj. Op. at 41.

not provide the notice that due process demands.  Despite Sutton's proclamations, it is indisputable that the Commonwealth made no effort to afford Stevenson notice of the final PFA order.  There is no evidence on the record that anyone attempted to serve Stevenson or that the Commonwealth undertook any steps reasonably calculated to provide notice.

The Majority relies upon several pieces of circumstantial evidence that it believes collectively establish the equivalent of actual notice, none of which, in my opinion, suffice.[36]  Neither service of the PFA petition nor notice of the temporary PFA order on August 23, 2019, is, or can be, notice of the final order.  The temporary PFA order no longer was in effect when Stevenson entered Yates' home, having either expired or been superseded by the final PFA order.  A conviction of ICC requires "notice of the specific order or decree," not notice of a prior or superseded order.[37]

Nor does notice of the final PFA hearing date or the possibility, potentiality, or even likelihood, of an adverse order in the defendant's absence establish notice of the final PFA order.  Even if the defendant chooses not to participate in a final PFA hearing, a final PFA order is not certain to result.  The plaintiff may not appear, or may not establish the abuse by a preponderance of the evidence.[38]  Although Stevenson ran the risk that an adverse ruling would ensue in his absence, this risk is not the same as knowledge of an adverse order for purposes of an ICC conviction.  Finally, circumstantial evidence that Stevenson knew that he should not be entering Yates' house in the middle of the night does not establish notice by the government of the final PFA order.  All of these facts are

---

[36]     *See* Maj. Op. at 41.

[37]     *See Baker*, 766 A.2d at 331.

[38]     *See* 23 Pa.C.S. § 6107(a).

irrelevant to determining whether Stevens had notice of the final PFA order that he was charged with violating.

Because the Commonwealth took no steps reasonably calculated to afford notice to Stevenson, this case is distinguishable from *Commonwealth v. Padilla*, upon which the lower courts relied. There, the victim had obtained an emergency PFA order against Padilla. Three days later, Padilla began threatening the victim by telephone and attempting to enter her apartment. The victim contacted the police. A police officer left Padilla a voice message advising him that the victim had obtained a PFA order and that Padilla was to have no contact with her. When Padilla returned the call, the police officer informed Padilla of the consequences for violating the order. After Padilla continued to harass the victim, he was arrested and charged with ICC. Examining the notice element of ICC on appeal, the Superior Court held that the telephone exchange between Padilla and the police officer constituted actual notice of the PFA order. *Padilla* included both notice of the PFA order and notice of the consequences for violating it, both of which were provided by an agent of the state that later sought to deprive the contemnor of his liberty. That notice is what due process demands. By contrast, the Commonwealth here made no effort to provide notice to Stevenson.[39]

In *Commonwealth v. Stallworth*, 781 A.2d 110, 124 (Pa. 2001), a capital case, the prosecutor sought to establish the aggravating circumstance that, at the time of the killing,

---

[39] Because the Commonwealth relied upon Sutton's statements to Stevenson as providing the requisite notice, nothing Stevenson did before being confronted by Sutton in the basement could constitute a violation of the PFA order, even under the Majority's analysis. Stevenson immediately departed after the encounter with Sutton. It is only Stevenson's subsequent return to Yates' residence later that morning that could serve as the basis for the ICC conviction under the Majority's approach.

"the defendant was subject to a court order restricting in any way" his contact with the victim.[40] On appeal, this Court was called upon to determine whether the phrase "subject to" in 42 Pa.C.S. § 9711(d)(18) required proof that the defendant had actual knowledge of the PFA order in order for the aggravating circumstance to apply. The Court ultimately held that the aggravating circumstance applies only where the Commonwealth proves that the defendant had "actual notice" or "the equivalent knowledge of a PFA order so as to be 'subject to' such an order."[41] Because the defendant had no knowledge of the order, he was not "subject to" the order for purposes of the aggravating circumstance of Section 9711(d)(18).

The Court had the opportunity to apply this standard several years later in *Commonwealth v. Staton*, 38 A.3d 785, 795 (Pa. 2012), where the defendant had not been served with the temporary or final PFA order. Instead, the Commonwealth relied upon, *inter alia*, evidence that the defendant admitted that he had "deliberately avoided the authorities, who were attempting to serve him with the order."[42] The Court relied upon this fact and several others to uphold the jury's finding of "equivalent knowledge of the PFA order" and the jury's rejection of the defendant's claim of ignorance.[43]

Under *Stallworth* and *Staton,* notice of a PFA can be achieved even in the absence of service of the PFA order if the Commonwealth establishes that it made an attempt reasonably calculated to provide notice. Under such circumstances, "actual notice" or

---

[40]     42 Pa.C.S. § 9711(d)(18).

[41]     *Stallworth*, 781 A.2d at 124.

[42]     *Staton*, 38 A.3d at 794-95.

[43]     *Id.*

"equivalent knowledge of the PFA order" will suffice.[44] Whether actual notice or its equivalent, the duty to provide such notice falls upon the government. In *Stallworth*, there was no evidence that the Commonwealth attempted to provide notice to the defendant, and, therefore, no basis for the Subsection (d)(18) aggravating circumstance. In *Staton*, the Court found the equivalent of actual notice where the defendant successfully evaded service by hiding from the Sheriff. I do not deny that the Commonwealth is entitled to rely upon the good faith efforts of its agents in making service. In contrast to *Staton*, there were no such efforts in this case. The Commonwealth cannot meet its burden by hoping that a private citizen eventually warns, truthfully or not, the defendant of the existence of a PFA order.

I am mindful of the policy considerations that drive the Majority's affirmance of Stevenson's conviction. But we cannot elevate those considerations above due process.[45] There is no doubt that the Commonwealth's failure to attempt or to ensure that Stevenson was served with the final PFA order left Yates exposed to harm that she had taken steps to avoid. There also is no doubt that the current gap in the law likely may contribute to such failure.

There are several ways to close this loophole. The General Assembly could amend the PFA Act to require law enforcement to effectuate service. In the absence of legislative action, this Court's Civil Procedural Rules Committee should examine whether we should amend our PFA rules to require service by law enforcement. Because the unequivocal purpose of the PFA Act is to protect victims from injury or death at the hands

---

[44]    *Stallworth*, 781 A.2d at 124.

[45]    *See* Maj. Op. at 11.

of abusers, it makes sense to require law enforcement to serve the defendant. Placing this obligation squarely upon law enforcement not only would comport with the Commonwealth's obligation under the Due Process Clause, but it also would remove any potential for the victim to be tasked with serving her own abuser. Further, requiring law enforcement to serve the defendant promptly will reduce the possibility that the defendant will remain unaware of the order and the restrictions with which he must comply. A PFA order does little to protect a victim if the offender remains ignorant of that order.

Some Pennsylvania counties already require law enforcement to provide service or to accompany the victim or other competent adult to provide service. For example, Allegheny County requires law enforcement to provide service of temporary PFA orders.[46] Recognizing the danger of requiring the victim to arrange service, Allegheny County requires the victim to "immediately" deliver a copy of the PFA petition and temporary PFA order to local police, advises that the plaintiff "should never attempt to personally serve the defendant," acknowledges that service may be accomplished by any competent adult who is not a party, related to a party, or employed by a party, and states that "[i]t is best for service to be made by a law enforcement officer." I agree. Counties should require that service of PFA petitions, temporary orders, and final orders be performed by police officers or Sheriffs.

In addition, to service by law enforcement, victims would be better served if temporary orders remained in effect until notice of the final order. Presently, under Section 6107(b)(2) of the PFA Act, when the court issues a temporary order, "the order

---

[46]    https://www.alleghenycourts.us/family/departments/protection-from-abuse/service-of-temporary-pfa-order/ (last viewed September 20, 2022). .

shall remain in effect until modified or terminated by the court after notice and hearing."[47]

If the final PFA hearing is continued, the trial court "may make *ex parte* temporary orders . . . as it deems necessary."[48]  The form required by Rule 1905 for final orders indicates that the final order supersedes any prior PFA orders between the parties.[49]  The question of whether the statutory language is flexible enough to permit courts to extend temporary PFA orders until notice of the final PFA order, or whether a legislative change would be necessary, is beyond the scope of this appeal.  In this case, the temporary order was in effect only until the final PFA hearing,[50] leaving Yates unprotected between the final PFA hearing and notice of the final PFA order.

Under the facts presented, the Majority holds that notice does not depend upon the identity of the informing party.  For the Majority, it is of no moment whether the person informing the contemnor of the order is the judge, a law enforcement officer, or some third person who heard about the order from someone else.  I would hold that due process prohibits the government from dispensing with notice by relying upon mere happenstance.  Before the Commonwealth may deprive an individual of life, liberty, or property for violating a court order, it must take some affirmative steps reasonably calculated to provide that individual with notice of the order.  The Commonwealth failed to do so here.  I respectfully dissent.

Justice Donohue joins this dissenting opinion.

---

[47]     23 Pa.C.S. § 6107(b)(2).

[48]     *Id.* § 6107(c)(1).

[49]     Pa.R.C.P. 1905.

[50]      https://www.alleghenycourts.us/family/departments/protection-from-abuse/general-information/ (last viewed September 20, 2022) ("[t]he Temporary PFA Order will remain in effect until the Final PFA Hearing date").