J-S03034-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RAUL N. CARABALLO, | : | |
| | : | |
| Appellant | : | No. 2673 EDA 2017 |

Appeal from the Judgment of Sentence July 18, 2017
in the Court of Common Pleas of Lehigh County
Criminal Division at No(s):  CP-39-CR-0002316-2016

BEFORE:  BENDER, P.J.E., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED MARCH 28, 2019**

Raul N. Caraballo ("Caraballo") appeals from the judgment of sentence entered following his conviction of two counts of aggravated assault, and one count of recklessly endangering another person ("REAP").[1]  We affirm.

In its Opinion, the trial court summarized the relevant testimony underlying the instant appeal as follows:

> On December 11, 2015, Joshua Flores [("Flores")] was visiting his cousin, Kristopher Miller [("Miller")], at 3221 Kingston Place in South Whitehall Township[, Pennsylvania].  [] Flores went outside to smoke a cigarette with [Miller], and while standing near the back of his truck, a car came down the road and "almost clip[ped] the front of [his] bumper driving by."  [] Flores decided to "slap the back of the [car and] … raised [his] hands up, because I was like, wow, you almost hit my truck."[FN]  The next thing he remembers

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2705.

is lying on the ground after being shot in the right knee.

---

[FN] … [] Flores … in the above quote, initially referred to the offending vehicle as a truck, then clarified that it was a car.

---

[] Miller explained that he was standing next to [] Flores[,] when he observed "[a] car [pull] around a turn. Somebody got out of the car and started shooting at [Flores]." [] Miller could not identify the "shooter," but observed him come out of the driver's side of the vehicle. He also saw Shanna Crowthers ("Crowthers") and Juan Martinez ("Martinez") get out of the vehicle and walk away. The vehicle and driver then fled the scene. Samantha Wagenhurst ("Wagenhurst") also observed the shooting, but could not make an identification[,] with the exception of identifying the shooter as the driver of the vehicle. [] Wagenhurst was close enough to see the "flame of the gun."

\* \* \*

[] Crowthers testified that she was a friend of [] Miller and attended a party at his residence on the night of the shooting. During the evening, she made contact with "Tony," whom she identified as [Caraballo], to purchase cocaine. She also identified [] Martinez as a friend of [Caraballo]. She agreed to meet them at the Target/Weis shopping center, which was across the street. She walked across the street and waited for [Caraballo] to arrive. A short time later, [Caraballo] arrived driving a 2007 Chevy Impala. A surveillance camera from Target captured [Caraballo's] vehicle at the shopping center, and it was identified by both [] Crowthers[,] and by Detective Timmy Shoudt during his investigation.

When [Caraballo] arrived, [] Martinez was in the passenger seat, and [] Crowthers was instructed to get into the back seat. The two then returned to Kingston Place. As they approached the residence, "Josh kicked the back of [Caraballo's] car." [Caraballo] then "slammed on the brakes," and all three exited the vehicle. [] Crowthers and [] Martinez started to "speed walk" towards the Target, and [Caraballo] started shooting in the direction where [] Flores was standing. [] Crowthers saw [Caraballo] with the gun in his hand, and could see the "light from the shots being fired." She heard three gunshots, all fired by [Caraballo] in the direction

of [] Flores.  [Caraballo] then got back in his vehicle and drove off.

Trial Court Opinion, 4/25/18, at 3-5 (footnote in original, remaining footnotes omitted).  Caraballo subsequently was arrested and charged with the above-described crimes.

Prior to trial, Caraballo filed an Omnibus Pretrial Motion, which, after a hearing, the trial court denied.   A jury ultimately convicted Caraballo of the above-described charges, after which the trial court sentenced Caraballo to an aggregate prison term of 9-20 years.  Caraballo filed a post-sentence Motion for a New Trial, which the trial court denied.  Thereafter, Caraballo filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Caraballo presents the following issue for our review: "Did the [trial] court err in not granting a mistrial and[/]or continuance and in not allowing [Caraballo] to fire counsel and proceed *pro se*[?]"  Brief for Appellant at 2.

Caraballo argues that at trial, "there was a complete lack of communication between [himself] and trial counsel."  **Id.** at 4.  Caraballo contends that the lack of communication was "so blatant and extreme that all through the course of the trial[,] the trial [j]udge had to step into the proceedings, again and again."  **Id.**  According to Caraballo, the trial judge even participated in the questioning of witnesses, to satisfy Caraballo's "legal concerns."  **Id.**  Caraballo asserts that trial counsel attempted to withdraw from representation several times, but the trial court denied counsel's

- 3 -

Motions. *Id.* Caraballo further contends that his counsel directed an expletive at Caraballo. *Id.* Caraballo invokes his Sixth Amendment right to represent himself, and directs our attention to portions of the transcript which, he claims, demonstrates his irreconcilable relationship with his counsel. *See id.* at 4-7. According to Caraballo, the circumstances warranted that the trial court grant his request to proceed *pro se*. *Id.* at 7.

We review a trial court's denial of a defendant's request to proceed *pro se* for an abuse of discretion. *Commonwealth v. El*, 977 A.2d 1158, 1167 (Pa. 2009). The Pennsylvania Supreme Court has "defined a court's discretion as the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. An abuse of that discretion is not merely an error of judgment, but … [a] manifestly unreasonable … result of partiality, prejudice, bias or ill will." *Id.* (quotation marks and citation omitted).

As our Supreme Court has explained,

> [a] criminal defendant's right to counsel under the Sixth Amendment includes the concomitant right to waive counsel's assistance and proceed to represent oneself at criminal proceedings. *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). The right to appear *pro se* is guaranteed[,] as long as the defendant understands the nature of his choice. … Where a defendant knowingly, voluntarily, and intelligently seeks to waive his right to counsel, the trial court, in keeping with *Faretta*, must allow the individual to proceed *pro se. See Commonwealth v. Starr*, [] 541 Pa. 564, 664 A.2d 1326, 1335 ([Pa.] 1995) (holding that a defendant must demonstrate a knowing waiver under *Faretta*). *See also Commonwealth v. McDonough*, [] 571 Pa. 232, 812 A.2d 504, 508 ([Pa.] 2002) (concluding that *Faretta* requires an on-the-record colloquy in satisfaction of Pa.R.Crim.P. 121, which colloquy may be conducted by the court, the prosecutor, or defense counsel.)[.]

The right to waive counsel's assistance and continue *pro se* is not automatic[,] however. Rather, **only timely and clear requests trigger an inquiry into whether the right is being asserted knowingly and voluntarily**…. Thus, the law is well established that "in order to invoke the right of self-representation, the request to proceed *pro se* must be made timely and not for purposes of delay and must be clear and unequivocal." ***Commonwealth v. Davido***, [ ] 582 Pa. 52, 868 A.2d 431, 438 ([Pa.] 2005).

***El***, 977 A.2d at 1162-63 (footnotes and some citations omitted, emphasis added).

In reviewing the timeliness of the request to proceed *pro se*, courts generally consider the point in the proceedings that the request is being made. In ***Commonwealth v. Owens***, 496 Pa. 16, 436 A.2d 129 (Pa. 1981), [the Supreme Court] noted that[,] "where the accused does not request to represent himself before trial, the constitutional right to self-representation recognized in ***Faretta*** is not implicated. When, during the course of trial, an accused wishes to dismiss counsel and either represent himself or obtain new counsel, his request is addressed to the sound discretion of the trial court." ***Owens***, 436 A.2d at 133 n.6 (citations omitted); ***see also United States v. McKenna***, 327 F.3d 830, 844 (9th Cir. 2003); ***Commonwealth v. Jermyn***, 551 Pa. 96, 709 A.2d 849, 863 (Pa. 1998). **Thus, whether the request was made before trial or during trial is a critical factor in determining the timeliness of the request**.

***Davido***, 868 A.2d at 438 (emphasis added).

In its Opinion, the trial court referred to the untimeliness of Caraballo's request to proceed *pro se*, as well as his disruptive behavior during the trial, as its bases for denying Caraballo's request to proceed *pro se*. **See** Trial Court Opinion, 4/25/18, at 7-10. Upon reviewing the record, we discern no abuse

- 5 -

of discretion by the trial court, and therefore affirm on the basis of the trial court's Opinion with regard to this claim.[2]  **See id.**

Judgment of sentence affirmed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/19

_____

[2] Our review further discloses that the trial court permitted Caraballo to make his own inquiries of the Commonwealth's witnesses, and encouraged Caraballo's counsel to use questions proposed by Caraballo.  However, Caraballo's proposed inquiries were not helpful to his defense.  **See**, **e.g.**, N.T., 4/12/17, at 52-54 (wherein the trial court and the prosecutor asked questions proposed by Caraballo, including whether police had tested Martinez for gunshot residue, or searched Martinez or his immediate area for weapons, yet the answers provided no support, and actually detracted from Caraballo's defense).

**IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA :
                                                  :
vs.                                              : NO. CR-2316-2016
                                                  : Superior Court No.: 2673 EDA 2017
RAUL CARABALLO                      :

\* \* \* \* \*

Appearances:

> Heather Gallagher, Chief of Appeals
> For the Commonwealth
>
> Albert Nelthropp, Esquire
> For the Appellant

\* \* \* \* \*

**OPINION**

**Robert L. Steinberg, Judge:**

On April 12, 2017, the appellant, Raul Caraballo, was found guilty by a jury of
Aggravated Assault (Serious Bodily Injury),[1] Aggravated Assault (Deadly Weapon),[2] and
Recklessly Endangering Another Person.[3] The appellant shot Joshua Flores in the right knee
after a minor incident involving the appellant's vehicle.

Following the verdict, a presentence report was ordered which reflected the
appellant's multiple convictions for primarily drug-related offenses. During the appellant's
testimony at trial, while denying that he shot Mr. Flores, the appellant readily admitted that he
was a drug dealer. On July 18, 2017, the appellant was sentenced to not less than nine (9) years

---

[1] 18 Pa.C.S. § 2702(a)(1).
[2] 18 Pa.C.S. § 2702(a)(4).
[3] 18 Pa.C.S. § 2705.

nor more than twenty (20) years imprisonment for the charge of Aggravated Assault (Serious Bodily Injury).[4]

On July 27, 2017, counsel for the appellant filed a "Motion for a New Trial," but prior to any hearing on that motion, counsel filed the instant appeal. The Notice of Appeal was filed on August 17, 2017. This Court then directed the filing of a Concise Statement pursuant to Pa.R.A.P. 1925(b), and counsel did so on September 19, 2017. The various complaints include the following: (1) the denial of appellant's continuance request; (2) the refusal to grant appellant's request to discharge trial counsel during trial; (3) permitting the testimony of Shanna Crowthers and Dennis Kibler; (4) the exclusion of Giovanni Jimenez's testimony; and (5) the denial of the Omnibus Pretrial Motions.

## Background

### A. Counsel

The appellant is currently represented on appeal by Albert Nelthropp, Esquire, his fourth attorney. Both trial counsel, David Nicholls, and Attorney Nelthropp were privately retained. His original counsel, Matthew Rapa, and subsequent counsel, Robert Sletvold, were court-appointed.

Throughout the proceedings, both pretrial and trial, the appellant was obstreperous. Attorney Rapa, who filed and litigated the Omnibus Pretrial Motions, filed a "Petition for Leave to Withdraw as Counsel" in which he asserted that the appellant "engaged in [a] course of conduct which has caused a complete breakdown of the attorney-client relationship... [by accusing counsel] of withholding evidence and colluding with the District

---

[4] The other charges of Aggravated Assault, as well as the charge of Recklessly Endangering Another Person, were treated as merged for sentencing purposes. Additionally, a charge of Persons Not to Possess... Firearms, pursuant to 18 Pa.C.S. § 6105(a)(1), which had been severed from the other charges, was later nol-prossed by the Commonwealth.

2

Attorney's Office to secure his conviction. During a recent outburst at a hearing... [the] Defendant made several false accusations against [counsel], called him an 'asshole,' and stated he no longer wanted his representation."[5] On November 7, 2016, Attorney Rapa was permitted to withdraw as counsel, and Attorney Sletvold was appointed to represent the appellant.

On December 12, 2016, Attorney Nicholls entered his appearance on behalf of the appellant. The appellant then began filing his own pro se motions, i.e., "Motion to Compell (sic) Discovery," and correspondence.

Trial had been originally scheduled for December 12, 2017, but because counsel had just entered his appearance, it was continued to January 23, 2017. On that date, Attorney Nicholls again requested a continuance because he needed "additional time to prepare for trial." The continuance was granted and trial commenced on April 10, 2017, with the resolution of outstanding motions.

On May 31, 2017, which was prior to sentencing, Attorney Nicholls was permitted to withdraw as counsel. Attorney Nelthropp has represented the appellant since that date.

## B. Trial Testimony

On December 11, 2015, Joshua Flores was visiting his cousin, Kristopher Miller, at 3221 Kingston Place in South Whitehall Township. Mr. Flores went outside to smoke a cigarette with his cousin, and while standing near the back of his truck, a car came down the road and "almost clips the front of [his] bumper driving by."[6] Mr. Flores decided to "slap the back of

---

[5] Petition for Leave to Withdraw as Counsel, ¶ 4-5.
[6] Notes of Testimony, Trial (hereinafter N.T.T.), Vol. 1, p. 59, April 11, 2017.

the [car]... raised [his] hands up, because I was like, wow, you almost hit my truck."[7] The next thing he remembers is lying on the ground after being shot in the right knee.[8]

Kristopher Miller explained that he was standing next to Mr. Flores when he observed "[a] car [pull] around a turn. Somebody got out of the car and started shooting at my cousin."[9] Mr. Miller could not identify the "shooter," but observed him come out of the driver's side of the vehicle.[10] He also saw Shanna Crowthers and Juan Martinez get out of the vehicle and walk away.[11] The vehicle and driver then fled the scene. Samantha Wagenhurst also observed the shooting, but could not make an identification with the exception of identifying the shooter as the driver of the vehicle.[12] Ms. Wagenhurst was close enough to see the "flame of the gun."[13]

Officer Joel Wischner of the South Whitehall Police Department responded to a report of "possible gunshots." He entered the Kingston Place residence and observed Mr. Flores with "an obvious hole in his leg," which Officer Wischner could tell was a gunshot wound.[14] He also observed a bullet on the carpet, which was believed to have fallen out of Mr. Flores leg, and shell casings outside the residence near his patrol vehicle. An ambulance was summoned, and Mr. Flores was transported to the hospital. Officer Wischner was directed by Kris Miller to Ms. Crowthers, who initially used the false name Weber, and Mr. Martinez, who were both walking back towards the residence. Both were transported to the South Whitehall Police Department.

Ms. Crowthers testified that she was a friend of Kris Miller and attended a party at his residence on the night of the shooting. During the evening, she made contact with "Tony,"

---

[7] Id. Mr. Flores, in the above quote, initially referred to the offending vehicle as a truck, but then clarified that it was a car.
[8] Id. at pp. 59-60.
[9] N.T.T., Vol. II, pp. 132-33, April 12, 2017.
[10] Id. at 134.
[11] Id. at 133-34.
[12] Id. at 144.
[13] Id. at 141, 143.
[14] N.T.T., Vol. I, p. 38.

4

whom she identified as the appellant, to purchase cocaine.[15] She also identified Mr. Martinez as a friend of the appellant.[16] She agreed to meet them at the Target/Weis shopping center, which was across the street. She walked across the street and waited for the appellant to arrive. A short time later, the appellant arrived driving a 2007 Chevy Impala.[17] A surveillance camera from Target captured the appellant's vehicle at the shopping center, and it was identified by both Ms. Crowthers and by Detective Timmy Shoudt during his investigation.

When the appellant arrived, Mr. Martinez was in the passenger seat, and Ms. Crowthers was instructed to get into the back seat. The two then returned to Kingston Place. As they approached the residence, "Josh kicked the back of [appellant's] car."[18] The appellant then "slammed on the brakes," and all three exited the vehicle. Ms. Crowthers and Mr. Martinez started to "speed walk" towards the Target, and the appellant started shooting in the direction where Mr. Flores was standing.[19] Ms. Crowthers saw the appellant with the gun in his hand, and could see the "light from the shots being fired."[20] She heard three gunshots, all fired by the appellant in the direction of Mr. Flores.[21] The appellant then got back in his vehicle and drove off.[22]

Ms. Crowthers initially walked away from the shooting scene, but returned when the police arrived. Mr. Martinez told her to provide a misleading story about the vehicle and the description of the shooter. She did so.[23] She was later charged with providing false information to the police, and after charges were filed, she gave a statement consistent with her trial

---

[15] Id. at 70-72, 76.
[16] Id. at 71.
[17] Id. at 31, 76-77, 85.
[18] Id. at 77.
[19] Id. at 78, 80.
[20] Id. at 79-81, 85, 87, 102-103.
[21] Id.
[22] Id. at 85-86.
[23] Id. at 82-84, 90-91, 104.

5

testimony. A charge remained pending at the time of trial, which she expected would be "dropped" or "reduced."[24]

Mr. Martinez was called as a defense witness, and confirmed that he was a passenger in the Chevy Impala operated by the appellant.[25] He also testified that he and Ms. Crowthers got out of the vehicle in close proximity to where Kris Miller and Joshua Flores were standing, and walked away.[26] He claimed to have not seen or heard the shooting, nor did he see the appellant drive away.[27]

One of the appellant's drug purchasers, Dennis Kibler, testified that on December 11, 2015, at approximately 4:00 a.m., which is after the shooting of Joshua Flores, the appellant stopped at his residence to deliver some "crystal meth." Mr. Kibler observed that the appellant had brought with him a ".380 caliber handgun." The appellant was asked about the weapon, and told Mr. Kibler that "some guy was messing with him, and he shot him in the leg. He shot him in the leg because he didn't want to take a murder charge."[28]

The appellant testified and denied shooting Mr. Flores. He admitted being with Ms. Crowthers and Mr. Martinez to attend a "party" at the location of the shooting, but after dropping them off, he departed the scene in a "light silver Chevy Impala 2007 LX"[29] for a "prior engagement." It was the same vehicle seen in the surveillance video. He heard no gunshots. He also claimed that although he was able to drive a vehicle, he could not shoot anyone with his right hand because it is disabled.[30]

---

[24] Id. at 101-102, 106.
[25] N.T.T., Vol. II, pp. 113, 118-19, 123.
[26] Id. at 125.
[27] Id. at 124-26.
[28] Id. at 25-27.
[29] Id. at 153-54, 156.
[30] Ms. Crowthers had testified that the appellant was holding the gun in his right hand.

6

The appellant also acknowledged that he knew Mr. Kibler, and may have visited him later that evening.[31] However, he denied possessing a gun that evening or admitting to Mr. Kibler that he shot anyone.[32] The appellant was confronted with a conversation that was intercepted in which he said "everywhere I go, my gun is on me."[33] The appellant's response was that he may have said that to "impress females."[34]

## C. Self-Representation/Continuance

The appellant made a request to proceed pro se, but only after "meaningful trial proceedings" had commenced with jury selection, opening statements, and a full day of testimony. The request was untimely and he is not entitled to relief. Commonwealth v. El, 977 A.2d 1158, 1163 (Pa. 2009)(A request for pro se status is timely when it is asserted before "meaningful trial proceedings," which has been interpreted as the commencement of jury selection, has begun.). "The right to waive counsel's assistance and continue pro se is not automatic... [Only] timely and clear requests trigger an inquiry into whether the right is being asserted knowingly and voluntarily. Thus, the law is well-established that 'in order to invoke the right of self-representation, the request to proceed pro se must be made timely and not for the purpose of delay....'" Id. (citations omitted). See also Commonwealth v. Davido, 868 A.2d 431, 438 (Pa. 2005); Commonwealth v. Green, 149 A.3d 43, 57 (Pa.Super. 2016).

Not only was the request to proceed pro se untimely, but it was also made in an effort to delay the proceedings. A review of the trial demonstrates that the appellant sought to derail the trial after the Commonwealth presented a substantial portion of its case in chief. In that vein, the appellant's mid-trial request for a continuance was also untimely, and there was no

---

[31] Id. at 171.
[32] Id. at 172.
[33] Id. at 176.
[34] Id.

7

abuse of discretion in denying it. Commonwealth v. Brooks, 104 A.3d 466, 477-79 (Pa. 2014). Furthermore, as will be explained, the appellant's disruptive behavior justified the refusal to permit self-representation. See Green, 149 A.3d at 59. A review of his trial testimony highlights his unwillingness to abide by instructions, and comply with court procedures.

The appellant's trial counsel represented him for four (4) months prior to the commencement of trial. He was ready to proceed on the date of trial, which had been scheduled months in advance. Throughout the proceedings, both pretrial and trial, it became apparent that the appellant intended to interfere and thwart the orderly administration of his trial. He demonstrated a quarrelsome nature and an inability to cooperate with his counsel and the court. His prior counsel, who handled pretrial motions, was permitted to withdraw after the appellant referred to him in "derogatory terms," and made false accusations.[35]

On the second day of trial, the appellant's antics commenced, and trial counsel told the Court that the appellant wanted to discharge him and represent himself.[36] The appellant then outlined his purported complaints which consisted of his access to discovery and Shanna Crowthers' testimony, a key Commonwealth witness. This Court attempted to reassure the appellant that the Commonwealth was still presenting their case, and any concerns he might have could be remedied.[37]

The appellant then accused trial counsel of using an epithet directed at him, and was offended by trial counsel's language. Trial counsel, who described his relationship with the appellant as "combative," did not deny, but did not recollect the particular invective.

Trial counsel did, however, indicate that he was prepared to proceed with the trial. Once again, this Court attempted to reassure the appellant that during the attorney-client

---

[35] Petition for Leave to Withdraw as Counsel.
[36] N.T.T., Vol. II, p. 5.
[37] Id. at 5-14.

8

relationship, tempers occasionally flare, but that does not mean that counsel cannot effectively represent him. The trial then resumed.

During the testimony of Detective Shoudt, who had been recalled by the Commonwealth on the second day of trial, the appellant decided to interfere with the trial.[38] He decided to ask his own questions while Detective Shoudt was on the witness stand. The questions involved gun residue testing, which was not performed on Mr. Martinez.

At the conclusion of Detective Shoudt's testimony, a discussion was held outside the presence of the jury, but in the presence of the parties. Trial counsel, who had been listening to appellant's complaint, then requested permission to withdraw. The Court denied the request, and the trial resumed.[39]

The Commonwealth rested its case, and the appellant resumed his repetition of dissatisfaction with trial counsel, telling this Court that he did not "want to continue with this trial."[40] Discovery grievances were again aired, and when counsel for the Commonwealth told him that "full discovery" had been provided to his counsel, the appellant's only response was "not to me."[41]

The appellant then requested to represent himself, and became much more animated in his responses. His conduct required this Court to alert him that he could remain in the courtroom, but he would be required to "act appropriately."[42]

During the ensuing discussion, the appellant was given the option to represent himself or allow trial counsel to continue to represent him. The appellant again expressed a

---

[38] Id. at 52-53.
[39] Id. at 67.
[40] Id. at 96-97.
[41] Id. at 98.
[42] Id. at 100.

9

desire for self-representation, but with a qualification: he needed "time to prepare."[43] The effect of the request would be a mistrial, and the request was denied. Trial then resumed with trial counsel through verdict.

New counsel entered his appearance after the verdict, but prior to sentencing. Trial counsel, who has since passed away, was permitted to withdraw on May 31, 2017.

## D. Testimony of Shanna Crowthers

The appellant alleges Ms. Crowthers was an untrustworthy witness and that her identification of the appellant was "tainted."[44] Ms. Crowthers testimony was scrutinized throughout the trial because she initially attempted to misdirect the investigation by describing the shooter as a "white bald man... driving like a Neon."[45] She also provided the police with a false name, Shanna Weber.[46] Once the police learned her true identity, she was charged with False Identification to Law Enforcement, Hindering Apprehension or Prosecution, and other offenses related to her initial statements to the police. A subsequent interview was conducted with the police, and Ms. Crowthers identified the appellant as the person who shot Mr. Flores. She identified the appellant throughout all of the pretrial and trial proceedings.

An "Omnibus Pre-Trial Motion," which included a "Motion to Suppress Pretrial Identification," was filed by counsel on August 26, 2016. A hearing on those motions was held during which Ms. Crowthers testified. On October 13, 2016, this Court issued an Order and Opinion denying that motion.

Ms. Crowthers identified the appellant from a photo spread, which contained eight (8) individuals. Detective Timothy Shoudt testified that he presented the photo spread to

---

[43] Id. at 99-100.
[44] Concise Statement, ¶ I.
[45] N.T.T., Vol. I, pp. 83, 90-91, 104.
[46] Id. at 84, 105.

10

Ms. Crowthers and his only explanation to her was that "it may or may not contain a person of interest." Ms. Crowthers confirmed Detective Shoudt's testimony regarding the presentation of the photo spread, and testified that she was able to identify the appellant from the photo spread "in seconds." Ms. Crowthers was also familiar with the appellant because she had previously purchased drugs from him.[47] She knew him as "Tony."[48]

The appellant does not contest the shooting of Mr. Flores, but only the reliability and trustworthiness of Ms. Crowthers' identification of him as the shooter. "It is a basic tenet of our system of jurisprudence that issues of credibility are properly left to the trier of fact for resolution." Commonwealth v. Whack, 393 A.2d 417, 419 (Pa. 1978). Although there "may be instances where the source of the evidence of guilt may be so unreliable and/or contradictory that a reviewing court might be required to overturn a conviction predicated on such evidence... that rule only applies in such cases where the patent unreliability of the testimony is such as to render a verdict based thereupon as no more than pure conjecture." Id. In Commonwealth v. Hudson, 414 A.2d 1381, 1385 (Pa. 1980), the testimony of witness who had been drinking beer and smoking marijuana, and only implicated appellant after his arrest, was not "patently unreliable." The witness, like the within case, initially denied knowledge of the appellant, and was facing pending criminal charges. It was held that "neither inconsistencies in the Commonwealth's evidence nor attempts by [the witness] to avoid involvement in a criminal episode render his testimony patently unreliable under the Farquharson standard." Id. See also Commonwealth v. Farquharson, 354 A.2d 545, 550 (Pa. 1976). The inconsistent statements made by the witness are a matter for the jury in assessing credibility. Hudson, 414 A.2d at 1385. See also Commonwealth v. Gibson, 720 A.2d 473, 480-81 (Pa. 1998).

---

[47] Id. at 70-72.
[48] Id.

11

The evidence implicating the appellant in this shooting was not limited to Ms. Crowthers or even the information retrieved from her cellphone corroborating her contact with "Tony" on the night of the shooting.[49] All of the evidence, including some of the defense testimony, demonstrate the reliability of her identification of the appellant. Dennis Kibler, a drug customer of the appellant's, testified that the appellant arrived at his residence after the time of the shooting with a .380 caliber handgun. The appellant, when asked about the firearm, said "some guy was messing with him, and he shot him in the leg."[50]

The appellant and his friend, Juan Martinez, who was a passenger in the vehicle driven by the appellant, also corroborated Ms. Crowthers' testimony. Mr. Martinez, who was a defense witness, denied that he witnessed the shooting, but identified the appellant as the driver of the vehicle that stopped outside the residence where the shooting occurred. He also corroborated Ms. Crowthers' testimony by placing himself in the vehicle with Ms. Crowthers, and exiting the vehicle with her prior to the shooting. The only remaining person in the vehicle was the appellant.

The appellant, who denied committing the shooting, admitted that he was the driver of the vehicle that dropped off Martinez and Crowthers. He placed himself at the scene of the shooting, which was also at the time of the shooting. No other vehicles were observed when Mr. Flores was shot. He also acknowledged that he knew Mr. Kibler, but denied possessing a firearm or making any admission to Mr. Kibler a few hours after the shooting.

The identification of the appellant is not really at issue. The "Motion to Suppress Identification" suggested that Ms. Crowthers was deceitful, and so the argument is advanced that her identification from the photo spread must be suppressed because it lacks "reliability." This

---

[49] Id. at 134-38.
[50] N.T.T., Vol. II, pp. 25-27.

12

argument is misplaced because it is the identification procedure and not the credibility of the person making the identification which is subject to review. See Perry v. New Hampshire, 565 U.S. 228 (2012)("[D]ue process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary."). Commonwealth v. Sanders, 42 A.3d 325 (Pa.Super. 2012)("The purpose of a suppression order regarding exclusion of identification is to prevent improper police action. Thus, where a defendant does not show improper police conduct resulted in a suggestive identification, suppression is not warranted."). See also Commonwealth v. Jaynes, 135 A.3d 606, 610 (Pa.Super. 2016).

Nothing presented at the suppression hearing would demonstrate that any police conduct resulted in an impermissibly suggestive identification. The appellant did not assert that the eight (8) person photo spread was improper, nor that Detective Shoudt suggested to Ms. Crowthers the identification of the shooter. Ms. Crowthers knew the appellant, and any motive for her identification goes to the weight of the evidence, not its admissibility. Sanders, 42 A.3d at 331. Additionally, even if the out-of-court identification was in some way suggestive, there was an independent basis for her identification. See also Commonwealth v. Small, 741 A.2d 666, 679 (Pa. 1999)(Witness's acquaintance with defendant prior to the commission of the crime provided "independent corroboration that the in-court identification was not tainted."); Commonwealth v. Johnson, 139 A.3d 1257, 1279 (Pa. 2016). No basis existed to suppress Ms. Crowthers identification.[51]

---

[51] The appellant also makes the vague assertion in his Concise Statement that "[t]he Court erred in allowing the identification testimony from a tainted source." See Concise Statement, ¶ E. A 1925(b) statement must be specific enough for the trial court to identify and address the issues the appellant wishes to raise on appeal. Waiver can be found where a concise statement is too vague. "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. A Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all." Commonwealth v. Dowling, 778 A.2d 683, 686-87 (Pa.Super. 2001); Commonwealth v. Lemon, 804 A.2d 34, 36-37 (Pa.Super. 2002); Commonwealth v. Reeves, 907 A.2d 1, 2 (Pa.Super. 2006). If this claim pertains to the identification of the appellant by Ms. Crowthers, it has been covered in the discussion in this section of the Opinion.

13

Ms. Crowthers was untruthful during her initial interaction with the police, but that lack of candor does not make her trial testimony "patently unreliable." A witness may provide an initial version of events that is discovered to be untruthful, but that does not preclude that person from choosing to "right the ship," and testify truthfully under oath. It "matters not whether the appellant finds a witness's testimony lacking in credibility; such matters are solely within the province of the jury." Commonwealth v. Poindexter, 646 A.2d 1211, 1214 (Pa.Super. 1994).

## E. Testimony of Dennis Kibler

Mr. Kibler testified that the appellant, who was his drug dealer, arrived at his home to deliver some crystal methamphetamine at approximately 4:00 a.m. on December 11, 2015, which was a "couple hours" after the shooting.[52] A .380 caliber handgun was observed by Mr. Kibler, and when he asked the appellant about the gun, the appellant replied "some guy was messing with him, and he shot him in the leg. He shot him in the leg because he didn't want to take a murder charge."[53] The appellant acknowledged that he knew Mr. Kibler, and that Kibler was a "customer."[54] However, he denied even displaying a handgun or admitting to shooting anyone.

It is alleged in the appellant's Concise Statement, without any specificity, that it was error to allow the testimony of Mr. Kibler because it was untrustworthy. No objection to Mr. Kibler's testimony was raised at trial, and this claim appears for the first time in the Concise Statement.[55] The issue is waived. Commonwealth v. Williams, 900 A.2d 906, 909 (Pa.Super. 2006)("An issue in a Concise Statement does not revive issues waived in prior proceedings.");

---

[52] N.T.T., Vol. II, p. 26.
[53] Id. at 25-27, 30.
[54] Id. at 164, 171-74.
[55] Concise Statement, ¶ H.

14

Commonwealth v. Watson, 835 A.2d 786, 791 (Pa.Super. 2003)("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal and thus waiver cannot be rectified by proffering it in response to a Rule 1925(b) order.").

Even so, if an examination of the merits of appellant's claim were conducted, it would provide him no basis for relief. "Issues of credibility are properly left to the trier of fact for resolution." Commonwealth v. Whack, 393 A.2d 417, 419 (Pa. 1978); see also Commonwealth v. Johnson, 910 A.2d 60, 65 (Pa.Super. 2006), quoting Commonwealth v. Randall, 758 A.2d 669, 674 (Pa.Super. 2000)("[I]t is within the province of the fact finder to determine the weight to be accorded each witness's testimony and to believe all, part, or none of the evidence introduced at trial."); see also Commonwealth v. Fortson, 165 A.3d 10, 14-15 (Pa.Super. 2017), quoting Commonwealth v. Hansley, 24 A.3d 410, 416 (Pa.Super. 2011).

A review of Mr. Kibler's testimony also does not support the conclusion that it was "patently unreliable."[56] Whack, 393 A.2d at 419; Commonwealth v. Fahy, 516 A.2d 689, 694 (Pa. 1986). He never provided a contradictory version of appellant's statements. His statement to the police was consistent with his trial testimony. Additionally, other testimony corroborated Mr. Kibler's recitation of appellant's statement. Witnesses, including Mr. Flores, testified that he was shot in the leg, and the shooting took place after someone "banged" on appellant's vehicle. Ms. Crowthers also corroborated the details of the shooting.

Mr. Kibler did not want to testify, but did so. He was initially interviewed at Lehigh County Jail, where he was serving a probation violation. No benefits or promises were made to him. His testimony was consistent with the other evidence presented by the Commonwealth. The only testimony that contradicted him was the appellant, which is not a

---

[56] See discussion *supra* regarding the testimony of Shanna Crowthers.

15

basis for finding Mr. Kibler's testimony unreliable. The jury was free to credit Mr. Kibler's testimony. Fahy, 516 A.2d at 694.

## F. Jury Instructions

The appellant contends that a "corrupt source" instruction regarding Shanna Crowthers should have been provided to the jury. See Pa.SSJI (Crim.) 4.01. The appellant was not entitled to that instruction because Ms. Crowthers was not an accomplice. She was present when Mr. Flores was shot, but she did not have the intent of promoting or facilitating the shooting of Mr. Flores, and did not: (1) solicit the appellant to commit the shooting; or (2) aid or agree to aid him in planning or committing the crime. Id. The shooting of Mr. Flores was not pre-planned, but was initiated by the appellant at the spur-of-the moment. Ms. Crowthers was not an "active partner in the intent to commit the crime." Commonwealth v. Swerdlow, 636 A.2d 1173, 1178 (Pa.Super. 1994).

The necessity of a corrupt source instruction has been explained as follows:

> It is the rule in Pennsylvania that the testimony of an accomplice of a defendant, given at the latter's trial, comes from a corrupt source and is to be carefully scrutinized and accepted with caution; it is clear error for the trial judge to refuse to give a charge to this effect after being specifically requested to do so. The justification for the instruction is that an accomplice witness will inculpate others out of a reasonable expectation of leniency. An accomplice charge is necessitated not only when the evidence requires an inference that the witness was an accomplice, but also when it permits that inference. Thus if the evidence is sufficient to present a jury question with respect to whether the prosecution's witness was an accomplice, the defendant is entitled to an instruction as to the weight to be given to that witness's testimony. Where, however, there is no evidence that would permit the jury to infer that a Commonwealth witness was an accomplice, the court may conclude as a matter of law that he was not an accomplice and may refuse to give the charge. This is so because a

16

> trial court is not obliged to instruct a jury upon legal principles which have no applicability to the presented facts. There must be some relationship between the law upon which an instruction is required and the evidence presented at trial.

Commonwealth v. Hall, 867 A.2d 619, 630 (Pa.Super. 2005), quoting Commonwealth v. Manchas, 633 A.2d 618, 627 (Pa.Super. 1993); see also Commonwealth v. Weiss, 81 A.3d 767, 804-805 (Pa. 2013); Commonwealth v. Treiber, 121 A.3d 435, 459-60 (Pa. 2015). Furthermore, even if Ms. Crowthers' involvement could be construed as an "accessory after the fact," a corrupt source instruction was not warranted. Hudson, 414 A.2d at 1385 (An accessory after the fact is not an accomplice.);[57] see also Commonwealth v. Smith, 495 A.2d 543, 549-51 (Pa. 1985)(collecting cases).

Defense counsel did not request a corrupt source instruction, and so this issue is waived. Commonwealth v. Boyer, 856 A.2d 149, 155 (Pa.Super. 2004)(Appellant waived claim that court omitted corrupt source instruction because he failed to request instruction and as a result is precluded from claiming error or the insufficiency of jury instruction on appeal.). Instead, he requested the standard instructions on "reasonable doubt and credibility."[58] A full credibility instruction was provided to the jury, including a specific instruction regarding Ms. Crowthers' prior inconsistent statement.[59]

---

[57] Criminal liability for being an accessory after the fact is imposed by 18 Pa.C.S. § 5105. Commonwealth v. Rosario-Hernandez, 666 A.2d 292, n.2 (Pa.Super. 1995). "Hindering apprehension involves the common law crime of accessory after the fact to any felony." Commonwealth v. Lindsay, 595 A.2d 86, 93 (Pa.Super. 1991).
[58] N.T.T., Vol. II, p. 183.
[59] Id. at 208.

17

## G. Testimony of Giovanni Jimenez

The appellant contends that Giovanni Jimenez was not permitted to testify. In fact, Mr. Jimenez did testify, but his testimony was not particularly enlightening.[60] He acknowledged speaking with Kristopher Miller while the two of them were incarcerated. Mr. Miller told him that he did not know who the "shooter was."[61] This was consistent with Mr. Miller's testimony at trial.

For all the foregoing reasons, the judgment of sentence should be affirmed.

---

[60] N.T.T., Vol. II, pp. 147-49.

[61] Id. at 148.

18