J-S28036-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PHILLIP WRIGHT | : | |
| | : | |
| Appellant | : | No. 180 EDA 2020 |

Appeal from the Judgment of Sentence Entered December 26, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0002632-2019

BEFORE:  BOWES, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED DECEMBER 16, 2021**

Phillip Wright (Wright) appeals from the judgment of sentence entered in the Court of Common Pleas of Delaware County (trial court) following his jury conviction of two counts each of possession with intent to deliver a controlled substance (PWID) and possession of drug paraphernalia.[1]  Wright raises several challenges to his conviction, including the trial court's denial of his motion to suppress evidence.  He also challenges the legality of his sentence based on double jeopardy-merger principals and the discretionary aspects of his aggregate sentence.  Because we agree with Wright that his

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30) and (32).

sentence is illegal, we vacate his judgment of sentence and remand for resentencing.

**I.**

**A.**

The relevant facts and procedural history of this case are as follows. On April 23, 2019, at 6:10 a.m., police executed a search warrant on Wright's apartment. The residence is part of a larger apartment building, but it has its own separate entrance. Just prior to Detective Michael Honaker's application for the search warrant, the confidential informant (CI) overheard Wright inform another individual that he had renewed his supply of cocaine with a large quantity and that he was packaging it for street sale. Detective Honaker had conducted four controlled buys of cocaine from Wright at his residence through the CI during April 2019.

During execution of the search warrant, a drug dog "alerted" on various areas of the apartment. Police found a small leather pouch inside the mailbox located outside and to the immediate right of Wright's front door. The pouch contained 46 green and clear plastic bags of cocaine along with drug packaging materials. The dog also "alerted" on a trashcan on the front porch directly next to Wright's apartment. The trashcan contained a large Utz potato stick can holding two bags of cocaine, drug packaging materials, a digital scale, a cardboard funnel, numerous empty plastic baggies containing cocaine

residue and two bottles of Inositol.[2]  A water bill with Wright's name and address were also in the trashcan.  Although he was not employed, $12,245.00 in United States currency was found in an air fryer in his kitchen and $631.00 in small denominations on his person.  At the time of his arrest in this case, Wright was on electric home monitoring for his prior convictions of two drug possession charges.

**B.**

Wright filed an omnibus pretrial motion challenging the legality of the search, arguing that the trashcan and mailbox were outside of the scope of the search warrant.  The search warrant included a "SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSON TO BE SEARCHED" which provided as follows:

> 2112 WEST 3rd STREET, CHESTER CITY, DELAWARE COUNTY, PENNSYLVANIA 19103.  This residence is a single house converted into apartments.  It is a three story red brick and tan siding with an **opened front porch made of stone and red brick pillars**. There are two visible front entrance ways to the residence.  There is a main entranceway with a dark colored front interior door and directly to the left of this door is a brown entranceway door with the number #1 and a white aluminum storm door directly covering this interior door.  This is the entranceway that is being utilized by Philip Wright a/k/a Philly Moe.  There is a series of black **mailboxes on the wall between the two front door entranceways**.

(Exhibit C-1) (emphases added).  The trial court denied the motion to suppress on July 18, 2019, following a hearing.

---

[2] Inositol is a cutting agent used for cocaine.  (**See** Receipt/Inventory of Seized Property, 4/23/19).

**C.**

Wright proceeded to a jury trial and was found guilty of the above-stated offenses. The trial court ordered preparation of a pre-sentence investigation report (PSI). At the December 26, 2019 sentencing hearing, the court heard extensive argument from the Commonwealth and defense counsel. The Commonwealth emphasized that the current offenses were Wright's fifth and sixth PWID charges, he had two prior possession convictions, and that he was on electric home monitoring at the time of the instant offenses. In contrast, defense counsel emphasized Wright's family considerations in that he is a father to four children and characterized him as having a low risk of recidivism given his age of 51 years. Wright was offered his right to allocution and waived it. (*See* N.T. Sentencing, 12/26/19, at 14).

After it considered the PSI and acknowledged on the record that Wright's incarceration was difficult for his entire family, the trial court sentenced Wright to an aggregate term of 14.25 to 40 years' incarceration followed by two years of probation. (*See id.* at 20). Specifically, it imposed consecutive standard-range sentences of 114 to 240 months' incarceration on the first PWID count and 57 to 240 months on the second PWID count, and to consecutive terms of one year of probation on each of the two possession of drug paraphernalia counts.

After sentencing, Wright filed a timely *pro se* notice of appeal and a *pro se* motion for reconsideration of sentence. The trial court denied Wright's

- 4 -

motion and appointed counsel to represent him. Wright and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b).

## II.

## A.

Wright first challenges the trial court's denial of his motion to suppress evidence.[3] He maintains that "the search of a trashcan and mailbox on the porch of a multi-unit building exceeded the scope of the premises to be searched contained in the search warrant." (Wright's Brief, at 26). Wright

---

[3]

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

> Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Harlan*, 208 A.3d 497, 499 (Pa. Super. 2019) (citation omitted).

claims there was no indication prior to the search that the trashcan or mailbox were under his sole control or that they would contain controlled substances.

"A search warrant may be issued to search for and to seize:  . . . (2) property that is or has been used as the means of committing a criminal offense; or (3) property that constitutes evidence of the commission of a criminal offense."  Pa.R.Crim.P. 201 (2), (3).

> The Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.' *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987), *quoting* U.S. CONST. amend. IV.  This requirement is meant to prevent general searches and "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.*  Along those lines, "the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Id.*
>
> *    *    *
>
> This court has recognized that the wording of Article I, Section 8 [of the Pennsylvania Constitution] is similar to the language of the Fourth Amendment.  But, this does not demand that the interpretation of the two provisions be identical.  The text of Article I, Section 8, "as nearly as may be," has been interpreted as requiring more specificity in the description of items to be seized than the federal particularity requirement.  This requirement makes general searches impossible and prevents the seizure of one thing under a warrant describing another.
>
> *    *    *
>
> This court has explained that the twin aims of Article I, Section 8 are the safeguarding of privacy and the fundamental requirement that warrants shall only be issued upon probable cause.  Probable cause is determined based on the totality of the circumstances. The totality of the circumstances test is satisfied where the police

officers have a reasonable belief that the items to be seized are related to criminal conduct and that those items are presently located in the place to be searched.

In order to protect these twin aims, a warrant must describe the place to be searched and the items to be seized with specificity, and the warrant must be supported by probable cause. The place to be searched must be described precisely enough to enable the executing officer to ascertain and identify, with reasonable effort, the place intended, and where probable cause exists to support the search of the area so designated, a warrant will not fail for lack of particularity. Thus, where a search warrant adequately describes the place to be searched and the items to be seized **the scope of the search extends to the entire area in which the object of the search may be found and properly includes the opening and inspection of containers and other receptacles where the object may be secreted**.

*Commonwealth v. Turpin*, 216 A.3d 1055, 1063–64, 1066-67 (Pa. 2019) (emphasis added; original brackets omitted).

In this case, the trial court found that the search of the trashcan and mailbox did not exceed the scope of the search warrant. It noted that the items were located directly outside of Wright's residential entrance and explained:

The search warrant contained descriptions of defendant's residence which included listing a description of the porch, as well as the mailbox. The search warrant included specific language describing the premises to be searched as "opened front porch made of stone and red brick pillars." (Exhibit C-1). The search warrant also specifically listed "mailboxes on the wall between the two front door entryways." (*Id.*). The drugs seized in this matter were found on the open porch in a trashcan located outside of defendant's door and in the mailboxes located between the entryways. Therefore, the areas where the drugs were found were listed in the description of places to be searched and not beyond the scope of the search warrant.

(Trial Court Opinion, 12/30/20, at 3) (citation formatting provided).

- 7 -

We agree with the trial court's assessment that the scope of the search warrant clearly included the front porch and mailbox area, and that it extended to "the entire area in which [controlled substances] may be found and properly include[d] the opening and inspection of containers and other receptacles where the [drugs] may be secreted" including the trashcan and mailbox. **See Turpin**, **supra** at 1067.

### B.

Wright next argues the trial court erred by failing to impose sanctions on the Commonwealth for a discovery violation in the form of presentation of inculpatory testimony without prior disclosure to the defense. Specifically, Wright takes issue with Police Officer William Murphy's testimony that he "asked one of the building's residents to whom the porch trashcan belonged, and the resident pointed to Wright's apartment door." (Wright's Brief, at 31) (citing N.T. Trial 11/26/19, at 202-04).[4]

_____

[4] Wright relies on Pennsylvania Rule of Criminal Procedure 573(B)(1)(b), which provides:

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

*(Footnote Continued Next Page)*

However, the Commonwealth contends that Wright waived this issue for his failure to raise it at trial or include it in his Rule 1925(b) statement. (**See** Commonwealth's Brief, at 12-14). We agree with the Commonwealth.

Issues not raised in trial court are waived and cannot be raised for the first time on appeal. **See** Pa.R.A.P. 302(a); **see also Commonwealth v. Smith**, 210 A.3d 1050, 1059 (Pa. Super. 2019), *appeal denied,* 218 A.3d 1199 (Pa. 2019). Wright did not raise a Rule 573 issue at the time of Officer Murphy's testimony regarding proprietorship of the trashcan. Additionally, Rule 1925(b) requires an appellant's statement to "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii); **see also Smith**, **supra** at 1059. Because Wright failed to raise this argument in his Rule 1925(b) statement, the trial court's Rule 1925(a) opinion does not discuss the lack of sanctions imposed on the Commonwealth for its purported

---

\*    \*    \*

(b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made that is in the possession or control of the attorney for the Commonwealth[.]

Pa.R.Crim.P. 573(B)(1)(b).

discovery violation, impeding our ability to review the issue.  Wright's second claim is waived.

## C.

Wright next contends the trial court imposed an illegal sentence and violated his double jeopardy rights under the United States and Pennsylvania Constitutions by failing to merge his two convictions of PWID and his two convictions of possession of drug paraphernalia for sentencing purposes.  He maintains there was only one act for each of these offenses, and that the "court punished Mr. Wright twice for the same offense."  (Wright's Brief, at 33).[5]  We agree with Wright.

The double jeopardy clause "prohibits the Commonwealth from punishing an accused twice for the same offense."  ***Commonwealth v. Robinson***, 166 A.3d 1272, 1276 (Pa. Super. 2017).  Section 9765 of the Sentencing Code addresses merger and provides:  "No crimes shall merge for sentencing purposes **unless the crimes arise from a single criminal act** and all of the statutory elements of one offense are included in the statutory

---

[5] Although Wright did not include this issue in his Rule 1925(b) statement, an illegal sentencing claim cannot be waived.  ***See Commonwealth v. Foster***, 960 A.2d 160, 164, 169 (Pa. Super. 2008), *aff'd*, 17 A.3d 332 (Pa. 2011) (stating issue based on double jeopardy-merger principles is considered to relate to the legality of sentence and illegal sentencing claims cannot be waived).  Therefore, our standard of review is *de novo* and our scope of review is plenary.  ***See Commonwealth v. Edwards***, 2021 WL 3628659, at *5 (Pa. filed Aug. 17, 2021).

elements of the other offense."   42 Pa.C.S. § 9765 (emphasis added). "Accordingly, merger is appropriate only when two distinct criteria are satisfied:   (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other."  ***Commonwealth v. Kimmel***, 125 A.3d 1272, 1276 (Pa. Super. 2015) (citation omitted).

Regarding these criteria, we have explained:

> In all criminal cases, the same facts may support multiple convictions and separate sentences for each conviction except in cases where the offenses are greater and lesser included offenses. The Supreme Court has further defined the same facts as follows:
>
>> **any act or acts which the accused has performed and any intent which the accused has manifested**, regardless of whether these acts and intents are part of one criminal plan, scheme, transaction or encounter, or multiple criminal plans, schemes, transactions or encounters.
>
> Regarding the consideration of greater and lesser included offenses, if each offense requires proof of a fact which the other does not, the offenses are not the same for double jeopardy and merger purposes, even though arising from the same conduct or episode.

***Commonwealth v. Roberts***, 133 A.3d 759, 773 (Pa. Super. 2016) (brackets and citations omitted) (emphasis added).  "One of the important protections offered by the federal double jeopardy clause is its guarantee against multiple punishment for the same offense at one trial."  ***Commonwealth v. Hill***, 238 A.3d 399, 410 (Pa. 2020) (citation omitted).

In this case, the cocaine recovered by police on Wright's property was found in the same location — on his front porch. Although the cocaine in the trashcan was in bulk form and the mailbox contained small bags packaged for street sale, the CI had recently overheard Wright explain he had "just renewed his cocaine supply with a large supply of cocaine, multiple ounces [approximately 5.5 ounces] that he had just acquired from his supplier over the weekend and that he was in the process of preparing and packaging the cocaine for purposes of street sales." (Affidavit of Probable Cause, 4/22/19; *see also* Receipt/Inventory of Seized Property, 4/23/19).

Both counts of PWID and both counts of possession of drug paraphernalia arose from Wright's single act of preparing the large quantity of cocaine he had just received from his supplier for distribution. Further, it is evident that all of the elements of the second count of PWID and of the second count of possession of drug paraphernalia are included within the elements of the first count of each charge, as the offenses are identical.

Based on the foregoing, we conclude that Wright's second count of each offense should have merged for sentencing purposes with the first count of each offense, and by failing to merge these convictions, the court imposed an illegal sentence.[6]

_____

[6] Although the Commonwealth refutes Wright's claim, it does acknowledge: "[Wright's] double jeopardy argument is compelling[.]" (Commonwealth's Brief, at 19). We are also mindful of the Dissent's reliance on
*(Footnote Continued Next Page)*

Because our disposition upsets the court's overall sentencing scheme, we vacate Wright's judgment of sentence in its entirety and remand for resentencing on the remaining PWID and possession of drug paraphernalia counts. *See Commonwealth v. Motley*, 177 A.3d 960, 963 (Pa. Super. 2018) (stating that if our disposition upsets overall sentencing scheme of trial court, we must remand so that it can restructure its sentence plan).[7]

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

---

*Commonwealth v. Williams*, 958 A.2d 522 (Pa. Super. 2008), for its conclusion that Wright's PWID convictions do not merge. In *Williams*, police recovered two baggies containing wafers of cocaine as they fell from the defendant's right sock during a search at the police station incident to his arrest. After the police obtained a search warrant, they recovered eight baggies containing crack cocaine and a 1.9 gram rock of crack cocaine from his vehicle, which was parked in a separate location at a hotel parking lot. We held that the trial court did not err in imposing consecutive sentences for two counts of possession of a controlled substance because "the facts underlying each crime are totally separate and constitute two different criminal acts." *Id.* at 527. These circumstances are readily distinguishable from those in the instant case where all of the cocaine was found in the same location — on Wright's front porch. Although the cocaine was packaged differently, it is evident from the record that Wright was in the middle of the process of converting the entire fresh supply of cocaine into smaller quantities for street sale. Because the factual circumstances of *Williams* are dissimilar and involved drugs found in two different locations, *i.e.*, on the defendant's person in the police station and in his vehicle in a hotel parking lot, we do not find its holding controlling.

[7] Because we are vacating the sentence in its entirety, we do not reach Wright's issue challenging the discretionary aspects of his aggregate sentence. We also need not address his sufficiency of the evidence claim because it essentially reiterates his double jeopardy-merger argument. (*See* Wright's Brief at 39-40).

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 12/16/2021*